Minor GRESSLEY, Plaintiff-Appellee,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellant.

No. 79–1025.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1979.

Decided Dec. 3, 1979.

Rehearing Denied Jan. 9, 1980.

Joseph B. Scott, Dept. of Justice, Civ. Div., App. Staff, Washington, D. C., for defendant-appellant.

Richard L. Swartz, Wabash, Ind., for plaintiff-appellee.

Before CUMMINGS and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

In June of 1968 the plaintiff-appellee, Minor Gressley, applied for social security disability benefits, alleging that he became unable to work in January of that year. The Social Security Administration denied the application, both initially and on reconsideration, on the ground that Gressley had not met the requirement that he have social security credits for twenty calendar quarters (five years) of work during a forty-quarter period (ten years) ending in or after the quarter in which he was disabled (20/40 requirement). 42 U.S.C. § 416(i)(3) (1976). To meet this requirement, Gressley would have had to work twenty calendar quarters during the period of January 1958 to January 1968. However, his social security account indicated he was employed only from the second quarter of 1965 until January 1968. Nonetheless, Gressley would have been eligible for benefits had he been able to show that his condition was disa-

bling in or before the third quarter of 1954, when he last met the 20/40 requirement. After a hearing, an administrative law judge affirmed the denial of benefits. The Appeals Council upheld that decision in October 1969. There the matter rested for more than three years.

In 1973 Gressley's wife wrote to President Nixon seeking his assistance in securing disability benefits for her husband. The White House referred her letter to the district office in Marion, Indiana. A claims representative from that office promptly contacted her and solicited her version of her husband's earlier travails with the Social Security Administration. The claims representative then reviewed Gressley's file and concluded that there were no irregularities in the process that culminated in the denial of benefits. He filed a report to that effect in March 1973, which appears to be a complete memorialization of his communications with Mrs. Gressley.

Mrs. Gressley, however, testified at trial that the claims representative told her that her husband could satisfy the 20/40 requirement if he filed amended tax returns reflecting self-employment income earned in 1963 and 1964 but not reported at that time. Mrs. Gressley filed the amended returns and sent checks to the Internal Revenue Service totalling $306.43 for back taxes. In June 1973 she filed a statement with the Social Security Administration requesting that her husband's record be credited with eight quarters of self-employment earnings for the period 1963–64. Accompanying the statement were copies of the recently filed amended tax returns. The Administration informed Mrs. Gressley in October 1973 that under section 205(c) of the Social Security Act, as amended, 42 U.S.C. § 405(c) (1976), the amended returns were ineffective to establish credits for self-employment because they were filed more than three years, three months, and fifteen days after incurrence of the tax obligation.[1] The Ad-

---

1. Section 205(c) of the Social Security Act, as amended, 42 U.S.C. § 405(c) (1976), provides in part for the revision of earnings records, *inter alia*, when:

ministration, on reconsideration, affirmed the denial of self-employment credit. An administrative law judge and the Appeals Council did the same.

In February 1976 Gressley brought suit in federal district court seeking judicial review of the decision. *Id.* § 405(g). The district court remanded the case to the Administration to develop a clearer record for review. Each level of the agency review mechanism acted as it had before and the matter finally reached the end of the administrative process in January of 1978. The parties then resubmitted the case to the district court on cross-motions for summary judgment. In his motion, Gressley asserted that his reliance [2] on the misinformation conveyed by the claims representative should estop the Government from denying him disability benefits. Judge Sharp agreed the case presented "an appropriate situation to apply an estoppel" and granted Gressley's motion.

█ At the outset, we note the duty of federal courts "to observe the conditions defined by Congress for charging the public treasury." *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Where a party not otherwise entitled to a statutory benefit seeks to invoke the estoppel doctrine, courts tread lightly for fear of breaching this duty. *See, e. g., Michals v. Federal Savings & Loan Insurance Corp.*, 413 F.2d 144 (7th Cir. 1969); *Mahoney v. Federal Savings & Loan Insurance Corp.*, 393 F.2d 156 (7th Cir.), *cert. denied*, 393 U.S. 837, 89 S.Ct. 112, 21 L.Ed.2d 107 (1968). Generally, reliance on misinformation provided by a Government employee does not provide a basis for an estoppel. *See, e. g., Goldberg v. Weinberger*, 546 F.2d 477 (2d Cir. 1976), *cert. denied*, 431 U.S. 937, 97 S.Ct. 2468, 53 L.Ed.2d 255 (1977).

The government could scarcely function if it were bound by its employees' unauthorized representations. Where a party claims entitlement to benefits under federal statutes and lawfully promulgated regulations, that party must satisfy the requirements imposed by Congress. Even detrimental reliance on misinformation obtained from a seemingly authorized government agent will not excuse a failure to qualify for the benefits under the relevant statutes and regulations.

*Id.* at 481.

This circuit is among the minority of jurisdictions that have applied the estoppel doctrine to the Government. *See United States v. Fox Lake State Bank*, 366 F.2d 962 (7th Cir. 1966). But we did so reluctantly, noting that "the doctrine of estoppel must be applied with great caution to the government and its officials." *Id.* at 965.

(4) Prior to the expiration of the time limitation following any year the Secretary may, if it is brought to his attention that any entry of wages or self-employment income in his records for such year is erroneous or that any item of wages or self-employment income for such year has been omitted from such records, correct such entry or include such omitted item in his records, as the case may be. After the expiration of the time limitation following any year—

\*    \*    \*    \*    \*    \*

(C) the absence of an entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following

such year, in which case the Secretary shall include in his records the self-employment income of such individual for such year. The time limitation referred to above "means a period of three years, three months, and fifteen days." *Id.* § 405(c)(1)(B).

2. "An estoppel . . . arises only when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance upon this belief." *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979). Gressley asserts that the payment of back taxes, which the Government could not have enforced because barred by the statute of limitations, satisfies this requirement. While remaining skeptical that payment of lawfully-incurred taxes can ever constitute a detriment sufficient to trigger an estoppel, we assume so in the interest of crystalizing the issue before us for review.

In *Fox Lake*, the Government sought to recover statutory forfeitures and statutory double damages under the Civil False Claims Act, 31 U.S.C. § 231 (1976), from a bank that had improperly, but nonfraudulently, filed claims for losses on FHA-insured loans. The gravamen of the Government's complaint was that the claims made no mention of the fraud of a bank employee in issuing the loans. For some time preceding the filing of the claims, the FHA had been in regular oral and written contact with the bank. As a result, the FHA was aware of these facts and encouraged the bank to promptly file the claims for the sole purpose of determining their eligibility for payment. We held only that the Government was estopped under these "peculiar circumstances" from recovering the statutory forfeitures and double damages. 366 F.2d at 966.

Unlike the present case, which involves a claim on the public treasury by one not statutorily entitled to draw on it, *Fox Lake* applied an estoppel to prevent the Government from suing to recover a statutory forfeiture and penalty. We find an important distinction. The invocation of estoppel in the latter circumstance does not result in the receipt of public funds by one otherwise not entitled to payment. Instead, the Government is merely barred from enforcing a claim that in fairness it should not be allowed to pursue. We recognize that forbearance to sue for a sum to which the Government is statutorily entitled may cost the Government as much as a direct payment to a statutorily ineligible person. The distinction lies in the fact that a Government right of action under a statute is usually a discretionary right. At any time, absent arbitrary and capricious action, it may choose to enforce or not enforce a right to sue. A congressional mandate to pay statutory benefits only to those so entitled presents a different case. Congress leaves no discretion in the agencies and courts but to limit payment of benefits to those statutorily entitled to them. When we estopped the Government in *Fox Lake*, we merely held that in light of the actions of the FHA it would be unfair for the Government to exercise its discretion to sue. Were we to estop the Government in the present case, we would instead be interfering with the duty of administrative agencies and courts to follow the mandate of Congress and limit payment to those whom our elected representatives have deemed eligible. *See Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

In light of the foregoing, we hold that the district court erred as a matter of law in applying the doctrine of estoppel to the facts of this case. Since we agree with the finding implicit in the district court's grant of summary judgment that Gressley was ineligible for disability benefits under the terms of section 216 of the Social Security Act, as amended, 42 U.S.C. § 416(i)(3) (1976), we need not remand.

Reversed.