In the Matter of CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY.

Appeal of UNITED STATES of America.

No. 81–1659.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1981.

Decided Jan. 13, 1982.*

* This appeal was originally decided by unreported order on January 13, 1982. See Circuit Rule

35. The panel has subsequently decided to issue the decision as an opinion.

Alan E. Kleinburd, U. S. Dept. of Justice, Washington, D. C., for United States.

Lawrence S. Adelson, Isham, Lincoln & Beale, Chicago, Ill., for trustee.

Before SPRECHER, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and BAUER, Circuit Judge.

SPRECHER, Circuit Judge.

The question on appeal is whether the bankruptcy reorganization court erred in holding that net track retirement charges of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company ("Milwaukee Road") were compensable and timely filed under the Milwaukee Railroad Restructuring Act ("MRRA" or "Act"), 45 U.S.C. § 901 et seq. Because we find that a fair construction of the statute fails to support the reorganization court's order, we reverse.

## I

The Milwaukee Road filed for reorganization under § 77 of the Bankruptcy Act, 11 U.S.C. § 205, on December 19, 1977.[1] The railroad continued to sustain substantial losses, and only the issuance of trustee certificates permitted the railroad to borrow enough money to continue operating. On April 23, 1979, the trustee of the Milwaukee Road petitioned the reorganization court to embargo most of the railroad's trackage. On September 27, 1979, the reorganization court entered an order providing for the embargo of non-viable lines, effective November 1, 1979.

In an attempt to prevent or delay a cessation of rail service, Congress passed the MRRA on November 4, 1979. The Act provided for short-term funding of Milwaukee Road lines operating as of October 15, 1979, in order to allow exploration of proposals for employee and shipper stock ownership plans.

Under § 7(d) of the MRRA[2] funds for continued rail service were to be provided pursuant to the Emergency Rail Services Act ("ERSA"), 45 U.S.C. § 661 et seq. The ERSA provides for trustee certificates, issued by the railroad trustee and guaranteed by the Secretary of Transportation, which are treated as expenses of administration receiving priority in payment. The proceeds from the sale of the certificates are to "be used solely for meeting payroll and other expenses which, if not met, would preclude continued provision of essential transportation services by the railroad." 45 U.S.C. § 662(b)(1).

Section 7(d) of the MRRA provided that these certificate guarantees would supply funds for the continued operation of the Milwaukee Road from the date of enactment until the end of a sixty-day period commencing on the date of the occurrence of one of several events catalogued in

§ 22(b) of the Act.[3] Whenever one of these § 22(b) events took place, the reorganization court was authorized to permit line abandonments. A § 22(b) event occurred when, on December 31, 1979, the Interstate Commerce Commission rejected a proposed employee ownership plan. Thus, guarantees of trustee certificates by the Secretary of Transportation were to cease after sixty days.

Section 7(e) of the MRRA[4] provided that the Secretary should guarantee certificates in an amount equal to the difference between the total expenses attributable to the maintenance and continuation of service and the total revenues of the railroad. When the trustee petitioned the reorganization court for authority to issue trustee certificates to resume service on embargoed lines, certain secured creditors objected. One of their objections was that continued operations would depreciate physical facilities and thereby deprive creditors of value without compensation. The reorganization court, in Order No. 246, granted the trustee's motion, noting that the cost of maintenance as well as the cost of service was provided for under the MRRA. In Order No. 246A, the court "clarified" Order No. 246 and construed the Act to permit compensation based on income or loss as found on line 42 of ICC Form R&EI. This line included "net retirement charges" for nondepreciable property as an expense. "Net retirement charges" arise under standard railroad accounting practice dictated by the Interstate Commerce Commission. The value of track is not entered as an expense at the time of purchase, nor is it depreciated. Instead, the original cost of the track minus its salvage value is entered as a "retirement charge" when a line is abandoned.

The trustee and the Secretary entered into a financing agreement which, when amended, provided for $50 million in trustee

---

1. The new Bankruptcy Act did not take effect until October 1, 1979. It extensively recodified the previous Act, so that the previous § 205 no longer appears in the new version.

2. 45 U.S.C. § 906(a).

3. 45 U.S.C. § 920(b).

4. 45 U.S.C. § 906(b).

certificate guarantees.[5] The trustee continued to operate the existing lines of the Milwaukee Road until February 29, 1980. On that date, abandonment of certain lines was approved by the reorganization court and the Milwaukee Road entered the original cost of the abandoned track, less salvage value, as a "retirement charge." Net retirements of $6,738.812 were entered on the books on February 29, 1980, and the trustee requested guarantees for trustee certificates totalling $56,803,362.

The Secretary of Transportation guaranteed trustee certificates totalling $50,000,000, but refused to guarantee the remainder. On December 2, 1980, the trustee filed a motion with the reorganization court to compel the Secretary to guarantee the additional $6,803,362. The Secretary opposed the motion, arguing that the "retirement charges" were not expenses within the meaning of § 7(e) of the MRRA and that the track retirements entered on February 29, 1980, had occurred after the sixty-day period specified in § 7(d). The reorganization court, while noting that the language of the MRRA supported the Secretary's position, ruled that the Act should be "liberally construed" in favor of the trustee. Thus, it entered Order No. 453 on February 18, 1981, directing the Secretary to guarantee another $6,738,812 in trustee certificates.[6] The Secretary appeals that order.

## II

### A

Section 7(e) of the MRRA requires the Secretary of Transportation to guarantee trustee certificates for the Milwaukee Road "in an amount equal to the difference between (1) the total expenses incurred by such railroad *attributable to the maintenance and the continuation of service* in accordance with subsection (d) of this section, and (2) the revenues of such railroad" (emphasis added). As the emphasized language demonstrates, the Act does not contemplate that every item classified as an expense will be compensated, but rather, only those which can be attributed to the continuing service mandated by the Act. We fail to see how "retirement charges," which are expenses only for accounting purposes, can be classified as "attributable to the maintenance and continuation of service in accordance with subsection (d)."

Where a case involves interpretation of a statute, we look first to the language of the statute. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976); *Chicago Transit Authority v. Adams*, 607 F.2d 1284, 1289 (7th Cir. 1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). *Accord, Burns v. Alcala*, 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975); *Tri-State Terminals, Inc. v. Jesse*, 596 F.2d 752, 755–56 (7th Cir. 1979). Where the statutory language is "sufficiently clear in its context," we need look no further in interpreting the statute. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976).

The interpretation of § 7(e) adopted by the reorganization court fails to comport with these maxims of statutory interpretation. First, the statute requires that the Secretary guarantee certificates only for expenses incurred in maintaining service under the MRRA. Thus, it limits compensable expenses to those incurred during the period of continued operation caused by the

---

5. This agreement provided that "in accordance with Section 7(d) of the MRR Act, the amount by which total Expenses exceed Total Revenues shall be determined by adjusting the net income or net loss figure on Line 42 of ICC Form R&EI [by various factors, not important to this appeal]." Appellant's Brief at Appendix F.

6. This amount represents only the guarantees for retirement charges which were disallowed by the Secretary. The refusal of the Secretary to guarantee an additional $64,550 is not at issue on this appeal.

MRRA. The retirement charges at issue, however, are expenses only in an accounting sense. Because the cost of trackage is not counted as an expense when laid, and is not depreciable, the cost, minus scrap value, must be entered upon the books when it is abandoned. This entry thus reflects the cost of using the trackage over its entire life. It is in no way limited to the period for which maintenance of service was mandated by the MRRA.

Second, § 7(e) limits compensable expenses to those attributable to the *continuation* of service. The purpose of the Act is stated in § 2(a)(8) to be "obtaining funds to meet payroll and other expenses necessary for continuation of services and reorganization of the Milwaukee Railroad."[7] The "retirement charges," however, are unrelated to the continued provision of rail service. While expenses such as payroll expenses have to be met in order to prevent a cessation of service, if retirement charges were not covered by guarantees of trustee certificates, the continued operations of the Milwaukee Road would not be endangered. Indeed, retirement charges cannot be "met," as contemplated by § 2(a)(8). There is no entity to which payment is owed.[8]

Furthermore, retirement charges are "accrued" only upon *abandonment* of trackage. The statute provides only for expenses related to the "maintenance" of service, and states that its objective is to prevent "a cessation of essential services by the Milwaukee Railroad."[9] It would seem anomalous, therefore, to permit funds earmarked for the continuation and maintenance of service to be expended for charges which occur only when service over a particular line has ceased.

Finally, the reorganization court's holding directly overruled the interpretation given the statute by the official charged with its administration. The Secretary of Transportation clearly interpreted the statute to mean that "retirement charges" were not compensable. Absent compelling indications that this interpretation was wrong, the Secretary's construction of the statute should have been followed. *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). *Accord, United States Steel Corp. v. E.P.A.*, 605 F.2d 283, 293 (7th Cir. 1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980). The reorganization court admitted that the Secretary's interpretation was supported by the language of the MRRA, but held that the Act should be broadly interpreted. We do not find this to be a compelling justification for overruling the Secretary's interpretation in favor of an interpretation which runs contrary to the plain language of the MRRA.[10]

### B

■ The trustee further argues that, notwithstanding the statutory language, the Secretary is estopped from contending that net retirements are not compensable under the MRRA. The trustee advances several arguments in support of this contention. First, the trustee argues that because the reorganization court ruled, in Order No.

---

**7.** 45 U.S.C. § 901(a)(8).

**8.** The fact that "retirement charges" were not identifiably owed to anyone raises the question as to whether they can be classified as expenses at all. *Webster's Third New International Dictionary* (1971), defines an expense as "something that is expended in order to secure a benefit or bring about a result." To expend is "to pay out or distribute." *Id.* It is clear that nothing has been expended at the time retirement expenses are entered onto the books. Because of an accounting peculiarity, expenses incurred possibly decades earlier are simply accounted for at this time.

**9.** MRRA § 2(b), 45 U.S.C. § 901(b).

**10.** The trustee argues that, even if they are not compensable as expenses, the retirement charges are valid approximations of the depreciation of trackage caused by continued service under the MRRA. No evidence was introduced below, however, indicating that the retirement charges were in any way a fair approximation of depreciation. The Secretary has stated his willingness to compensate the trustee for any depreciation the trustee is able to prove to have been caused by continued service under the MRRA. The use of "retirement charge" entries in an attempt to achieve compensation without this proof is unjustified.

246, that the MRRA provides compensation to the estate of the bankrupt railroad for erosion of facilities, the Secretary's failure to object to that order estops him from the position he takes on this appeal. Second, the trustee argues that the government is estopped by its failure to object to the reorganization court's statement in Order No. 246A that the difference between revenues and total expenses, compensable under § 7(e), would be determined by adjusting the net income or net loss figure on Line 42 of ICC Form RE&I, which includes retirement charges as an expense. Finally, the trustee points to the financing agreement between himself and the Secretary which provides that expenses are to be determined according to Line 42 of ICC Form RE&I.

We fail to see how any of these arguments estop the government from contending on appeal that retirement charges are not compensable under § 7(e) of the MRRA. The Secretary of Transportation did not object to Order No. 246 because the Secretary does not dispute that the MRRA permits compensation for erosion of facilities. The government's position is simply that retirement charges are not compensable as expenses attributable to maintenance and continued operations under the MRRA.

As to the argument that Order No. 246A and the financing agreements indicate that Line 42 of ICC Form RE&I is to be used to compute railroad expenses, we note that both the order and the financing agreement were formulated to provide for the initial issuing of guarantees under the MRRA. At that point, § 7(d) was the controlling section, providing for guarantees "on the basis of an estimate of the amount required to be provided under subsection (e)." Thus, Order No. 246A and the financing agreement can be fairly read to direct that Line 42 be used as an *estimate* of the total expenses which would ultimately be compensable under § 7(e).[11] Thus, we cannot say that the Secretary "so acted as to mislead another,"

*Packard Bell Electronics Corp. v. Ets-Hokin,* 509 F.2d 634, 637 (7th Cir. 1975), in interpreting the finance agreement and order as he did, and not objecting to either document. Thus, estoppel cannot properly apply here.

■ Even were we to find that estoppel would properly be applied in an action between private parties, however, we would decline to apply it in the circumstances of this case. While "[t]his Circuit is among the minority of jurisdictions that have applied the estoppel doctrine to the Government," *Gressley v. Califano,* 609 F.2d 1265, 1267 (7th Cir. 1979), the federal courts are bound "to observe the conditions defined by Congress for charging the public treasury." *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Thus, the government is not generally bound by the "unauthorized representations" of its agents. *Goldberg v. Weinberger,* 546 F.2d 477, 481 (2d Cir. 1976), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977). *Accord, Strauch v. United States,* 637 F.2d 477, 482 (7th Cir. 1980) ("Estoppel against the United States is rarely appropriate").

In *Gressley v. Califano,* 609 F.2d 1265 (7th Cir. 1979), this court refused to estop the Social Security Administration from denying benefits to a party who claimed to have relied upon misinformation supplied by the Administration's agent in filing a claim. This court distinguished *United States v. Fox Lake State Bank,* 366 F.2d 962 (7th Cir. 1966), where estoppel of the government was permitted, on the ground that while *Fox Lake* had applied estoppel to prevent the government from suing to collect a statutory penalty, *Gressley* involved "a claim on the public treasury by one not statutorily entitled to draw on it." 609 F.2d at 1268. This distinction was important to the court because, while the decision to sue a party is within the discretion of an

---

11. The language of Order No. 246A supports this interpretation. The court directed only that the financing agreement between the trustee and the Secretary contain "terms having substantially the effect" of the formulation suggested by the court. Similarly, the financing agreement stated that the suggested formulation was "in accordance with Section 7(d)," which only provides for an estimate of § 7(e) expenses.

agency, "Congress leaves no discretion in the agencies and courts but to limit payment of benefits to those statutorily entitled to them." *Id.*

This case falls squarely within the holding of *Gressley.* Here, too, we are asked to apply estoppel to the government and order payment to the trustee of funds to which he is not entitled. To permit estoppel of the Secretary and thereby compel the payment of funds not authorized by Congress under the MRRA would be in direct conflict with our duty "to follow the mandate of Congress and limit payment" to those expenses statutorily authorized. *Id.* at 1268. The government cannot, therefore, be estopped from proving, as it did, that § 7(d) does not provide for compensation of retirement charges.

### C

■ Even if we were to find that retirement charges are compensable under § 7(e), we would still be forced to find that the charges in this case were not filed within the required statutory time period.

Section 7(d) of the MRRA directs the Secretary to guarantee trust certificates "for the 60-day period beginning on the date of the occurrence of an event described in Section 22(b)." Both parties agree that such an occurrence took place on December 31, 1979. They disagree, however, on whether December 31, 1979, is to be included as the first day of the sixty-day period under § 7(d). If it is, then the retirement charges entered on February 29, 1980, even if compensable as expenses under § 7(e), would be untimely under § 7(d). If the date of the event is excluded from the sixty-day period, however, then the retirement charges were filed within the sixty-day limit.

Once again, we look first to the language of the statute and the usual and ordinary meaning of the words used. *Consumer*

*Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). There seems to us to be no question but that the words "the sixty-day period beginning *on* the date of the occurrence" do not permit an interpretation which would read them to say "the sixty-day period beginning *the day after* the date of the occurrence." Thus, the sixty-day period commenced on December 31, 1979, and the retirement charges entered on February 29, 1980, were untimely under § 7(d) of the MRRA.

We are not convinced by the trustee's arguments to the contrary. The cases he cites in support of the proposition that statutory periods begin to run the day after the specified date do not deal with a term which so explicitly contemplates inclusion of the first day of the period. Nor are we convinced by the argument that the reorganization court and the Interstate Commerce Commission interpreted the statute to require guarantees of certificates to cover expenses incurred through February 29, 1980. Neither the agency nor the court was ruling on this precise question, and we cannot ignore clearly stated congressional intent.[12]

### III

We hold, therefore, that retirement charges do not fall within the definition of expenses for which trustee certificate guarantees must be issued by the Secretary of Transportation under § 7(e) of the MRRA. Furthermore, even if these charges were to fall within the definition of expenses, they were not incurred within the statutorily required period, and thus are not compensable under § 7(d). All the parties agree, however, that the MRRA provides for compensation of any physical erosion that may have resulted from operations required by the MRRA. Thus, we remand to the reorganization court to consider the appropriate

12. The trustee also argues that the Secretary, because he did not object to the reorganization court's interpretation, is estopped from maintaining here that the statutory period had been exceeded. As we note in part II–B *supra,* the actions of a government official will not estop the government from refusing to pay out funds contrary to the commands of Congress. *Gressley v. Califano,* 609 F.2d 1265, 1268 (7th Cir. 1979).

amount of compensation for this expense. The order of the reorganization court is Reversed and Remanded.