**Yolanda SCARLATA**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services.**

**Civ. A. No. 81–1103.**

United States District Court, E. D. Pennsylvania.

March 8, 1982.

Mark S. Fridkin, Philadelphia, Pa., for plaintiff.

John T. Farrell, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

LUONGO, District Judge.

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final

---

decision of the Secretary of Health and Human Services (Secretary) denying plaintiff disability and supplemental security income benefits. *See* 42 U.S.C. §§ 416(i), 423 and 1381a. The magistrate, to whom the matter was referred for report and recommendation, recommends that I enter summary judgment in favor of the plaintiff. For reasons discussed in this memorandum, I will reject that recommendation, deny the cross-motions for summary judgment, and remand to the Secretary for further proceedings not inconsistent with this memorandum.

The Secretary found that plaintiff, a 60 year old white female, suffers from hypertension, minimal spinal abnormalities, and pain in her back. Nevertheless, the Secretary concluded that these conditions were not of such severity as to prevent plaintiff from performing her past relevant work as a file clerk or terminal operator. Therefore, the Secretary concluded that plaintiff was not disabled within the meaning of the Social Security Act.

The sole issue for this court to determine is whether there is substantial evidence in the record as a whole to support the Secretary's findings. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Under the substantial evidence test, the reviewing court is bound to accept the Secretary's findings if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The evidence presented in this case consists only of the oral testimony of plaintiff and her nephew and the medical reports of five physicians. The Administrative Law Judge in his decision summarized all of the evidence and arrived at the following pertinent findings:

2. The claimant has the following impairments: Scoliosis of the lumbar spine; lordosis; subluxation of the lumbar spine and pelvis; disc space narrowing; degenerative disc disease; gall stones and hypertension.

3. The claimant's testimony in regard to subjective complaints including pain is not credible as to the severity and duration of such symptoms, and further, credible limitations related to such symptoms do not restrict the claimant to a greater degree than established by the medical record.

4. The claimant has the residual functional capacity to perform work-related functions except for work involving more than minimal lifting, sitting for any length of time, frequent bending, squatting or crawling or climbing and working around moving machinery.

(Tr. 14). The ALJ's discussion of the evidence, however, is minimal and provides little or no explanation of how he arrived at his findings.

The failure of the ALJ in this case to state the reasons for his findings renders judicial review impossible. As the magistrate accurately points out in his report,[1] there is a significant quantum of probative evidence in the record which supports plaintiff's claim. In view of that evidence, it was incumbent upon the ALJ to provide some explanation why some evidence was accepted while other evidence was rejected. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). The ALJ, however, made no attempt to reconcile the conflicting medical evidence presented. In the absence of an explanation from the ALJ giving the reasons for his findings, it is impossible for the reviewing court to fulfill its statutory obligation of review without engaging in a *de novo* review of the evidence. Accordingly, I will remand this matter to the Secretary with the direction to reconsider the evidence and to explain on the record the reasons for his findings, including his reasons for rejecting the probative evidence in support of plaintiff's claim.

Recently, in *Cotter v. Harris, supra*, the Court of Appeals for the Third Circuit discussed the need, in reviewing administra-

---

1. The magistrate's report is attached as an appendix to this memorandum.

tive decisions on disability claims, for some explanation of the reasons underlying the hearing examiner's findings:

> In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

642 F.2d at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975)). The decision in *Cotter* expressly recognizes that in the context of determining eligibility for disability benefits, Congress has carefully defined the separation between administrative and judicial responsibilities. Furthermore, if the coordinate roles of the Secretary and the courts are to be mutually respected, the onus falls in the first instance on the Secretary to adequately explain the basis of his decision. Without such an explanation, judicial review almost inevitably results in a usurpation of the administrative fact-finding function under the guise of review.

The principles underlying *Cotter* apply with full force in the present case. Because of the deficiencies in the ALJ's decision, the magistrate has recommended, in effect, that I assume the role of fact-finder, thereby substituting my judgment for that of the ALJ. In fairness, I note that the magistrate has aptly targeted in his report the two particular findings in the ALJ's decision which cannot properly be reviewed on the basis of the record as it now stands. On remand, I suggest that the Secretary develop these points more fully.

First, the ALJ's determination that plaintiff's hypertension is not a severe impairment should be elaborated upon. The sum and substance of the ALJ's discussion of plaintiff's hypertension is as follows: "In fact the most significant problem was hypertension, with no significant restrictions related thereto, notwithstanding, [*sic*] the need to have the pressure under control." (Tr. 12). The uncontradicted medical evidence establishes that plaintiff suffers from moderately severe to uncontrolled hypertension. While this fact alone does not necessarily imply that plaintiff is disabled within the meaning of the Act, there is medical evidence in the record which indicates that the controlling of plaintiff's hypertension was a *prerequisite* to her ability to be gainfully employed. (*See* Report of Leon Cander, M.D., Tr. 123–24; report of Barry L. Getzoff, D.O., Tr. 128). Once again, to use the language of the court in *Cotter*:

> Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980), an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.

642 F.2d at 706–07.

Second, the ALJ's rejection of plaintiff's pain as disabling requires further elaboration before effective judicial review can be provided. In finding that the severity of plaintiff's subjective complaint of pain was not so great as to prevent her from performing her former work as a file clerk or terminal operator, the ALJ pointed to several factors. The ALJ first observed that the medical evidence relating to plaintiff's spinal abnormalities was not consistent with the level of pain testified to by plaintiff. All of the medical evidence demonstrated that plaintiff does suffer from certain spinal deformities, but the abnormalities are minimal and do not significantly reduce plaintiff's range of motion. Second, the ALJ pointed to plaintiff's daily activities of dishwashing, bedmaking, and the fact that she climbs steps twice a day. Finally, the ALJ found that the statement of plaintiff's treating physician that plaintiff was unable to work due to low back pain was not supported by "sufficient objective

evidence to indicate impairments of such severity as alleged by the doctor's conclusion that the claimant is disabled." (Tr. 13–14).

The ALJ's discussion of the severity of plaintiff's pain raises more questions than it answers. The ALJ totally failed to mention the weight, if any, given to the corroborating testimony of plaintiff's nephew that plaintiff does in fact suffer from disabling pain. Furthermore, while the ALJ expressly acknowledged that pain itself—even where unaccompanied by objective observable symptoms—may be disabling, see Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975), it appears from the record that the ALJ may have given little more than lip service to that legal precept. Indeed; the pertinent agency regulation requires only a showing of medical signs or laboratory findings "that there is a medical condition that could be reasonably expected to produce" the pain of which the claimant complains. 20 C.F.R. § 404.1529 (emphasis added). Plaintiff's spinal deformities, coupled with the medical evidence that plaintiff also suffers from osteoarthritis, could reasonably be expected to produce pain equivalent to that alleged by plaintiff. Finally, not sufficiently clear from the record are the ALJ's reasons for not accepting the statement of the treating physician that plaintiff suffers from disabling pain. The ALJ simply concluded that there was not sufficient other medical evidence in the record to support the opinion of the treating physician. However, one of the physicians to whom plaintiff was referred by the Secretary did state that there was evidence which indicated that plaintiff was limited in performing basic work functions. (See Report of Barry L. Getzoff, D.O., Tr. 128). The ALJ made no attempt to reconcile this evidence with that provided by the treating physician.[2] In sum, it is difficult to evaluate the ALJ's findings with respect to plaintiff's complaints of pain. While there is medical evidence which indicates that plaintiff does in fact suffer from back pain, the evidence is for the most part inconclusive. As a result, it appears on this record that the ALJ's inferences from the medical evidence are largely speculative. Since I am not prepared to determine that no rational basis exists for the ALJ's findings, I believe it is best to provide the ALJ with an opportunity to give substance to his findings. I recognize the administrative burden that this imposes, but as stated so frequently, "[c]omplaints of disabling back pain are among the most difficult types of claims to resolve with any degree of certainty." Taybron v. Harris, 667 F.2d 412, 415 (3d Cir. 1981) (per curiam). Thus, if meaningful judicial review is to be provided, an adequate administrative record is a must.

Accordingly, for reasons expressed in this memorandum, the cross-motions for summary judgment will be denied, and the case remanded to the Secretary for further proceedings not inconsistent with this memorandum.

## APPENDIX

### REPORT—RECOMMENDATION

RICHARD A. POWERS, III, United States Magistrate.

This is an action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final decision of the defendant, Richard S. Schweiker, Secretary of Health and Human Services (hereinafter, "Secretary"), denying the plaintiff's claim for disability benefits under the Social Security Act (hereinafter, "Act"). Presently before the Court are cross-motions for summary judgment.

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 31, 1979. Both applications were denied initially and upon recon-

---

**2.** I note that there is some question as to the qualification of Dr. Anthony Janelli, the treating physician of Mrs. Scarlata. Other than the testimony of plaintiff herself, there is no evidence in the record which even indicates whether Dr. Janelli is a licensed medical doctor or osteopath. This uncertainty should be clarified on remand.

sideration by the Social Security Administration after the Pennsylvania State Agency found that the plaintiff was not under a disability within the meaning of the Act.

At the request of the plaintiff, the case was considered *de novo* by an Administrative Law Judge (hereinafter "ALJ"). The plaintiff, represented by her attorney, and the plaintiff's nephew, John Gallo, testified at the hearing. In a decision dated November 25, 1980, the ALJ determined that the "claimant's impairments do not prevent the performance" of her "past relevant work as a file clerk and possibly as a terminal operator." (tr. 14 and 15). The ALJ then concluded that the plaintiff was not disabled within the meaning of the Act and was therefore not entitled to disability insurance benefits or supplemental security income. The ALJ's decision became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on January 30, 1981.

The issue before this Court is "whether there was substantial evidence in the record as a whole to support the finding of the Secretary that the claimant was not entitled to receive disability insurance benefits" or supplemental security income. *Harkin v. Califano*, 453 F.Supp. 29 (E.D.Pa.1978); 42 U.S.C. §§ 405(g) and 1383(c)(3). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), *Smith v. Califano*, 637 F.2d 968 (3 Cir. 1981).

After careful review of the entire administrative record, we find that the Secretary's decision is not supported by substantial evidence and the plaintiff's motion for summary judgment should be granted and the defendant's motion denied.

In order for the plaintiff to establish that she was disabled and thus eligible for either disability insurance payments or supplemental security income, she had the burden of proving that she was unable to engage in any "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

It is well-settled, however, that once a plaintiff has established an inability to perform her former employment, the burden of proof shifts to the Secretary to show that the plaintiff "has the capacity to perform specific jobs that exist in the national economy." *Rossi v. Califano*, 602 F.2d 55, 57 (3 Cir. 1979), *Rich v. Harris*, 503 F.Supp. 1041 (E.D.Pa.1980).

The ALJ precluded the shifting of the burden of proof when he found that "there is no impairment shown in this case which has prevented or would prevent the claimant, for continuous period of twelve months, from returning to her former work." (tr. 13). This factual determination by the ALJ is in direct contrast with the medical evidence received and with the testimony given by the plaintiff and her nephew at the hearing before the ALJ. The record is void of substantial evidence upon which the ALJ could base his conclusion.

Since there was no testimony received from a vocational expert, the evidence in this case consists only of the testimony of the plaintiff and her nephew and the medical reports of five (5) doctors. The ALJ expressly discredited the plaintiff's "subjective complaints including pain." (tr. 14). The ALJ apparently also ignored the corroborating testimony of John Gallo—the only reference to this witness being the following: "The claimant's nephew, John Gallo, appeared and testified. Basically, his testimony corroborated that of the claimant's." (tr. 10). The ALJ's finding of lack of credibility was inadequately explained and unjustified, *Baerga v. Richardson*, 500 F.2d 309, 312 (3 Cir. 1974), *cert. denied*, 420 U.S. 931 [95 S.Ct. 1133, 43 L.Ed.2d 403] (1975), there is nothing in the testimony of either witness which supports the finding of the ALJ that the plaintiff can perform her former work. The mere fact that the plaintiff engages in sporadic and transitory activities such as occasionally climbing one (1) flight of stairs, making her bed and dressing and washing herself does not demonstrate her ability to engage in substantial gainful employment. In fact, such minimal

activity may support the fact that she is unable to engage in such employment. *Smith v. Califano, supra* (3 Cir. 1981).

Still in search of substantial evidence to support the Secretary's decision, we next look to the medical reports of five (5) doctors who examined the plaintiff. Dr. Anthony Janelli is the treating physician of the plaintiff.[1] Dr. Janelli's report dated June 22, 1980 lists various ailments afflicting the plaintiff and concludes that the plaintiff "is unable to work due to severe low back pain." (tr. 138).

Dr. Leonard Camnitz, a specialist in roentgenology, examined the lumbar spine and pelvis of the plaintiff and listed eight (8) findings of abnormalities in his February 21, 1980 report. (tr. 125–126). Dr. Camnitz made no opinion as to the ability of the plaintiff to work.

Dr. Barry L. Getzoff examined the plaintiff on behalf of the Social Security Administration. Dr. Getzoff found the plaintiff to have "uncontrolled hypertension" and "[s]coliosis of the lumbar spine with probable osteoarthritis in this area." (tr. 128). He concluded as follows in his report dated March 5, 1980:

> At the present time, there is evidence that she would be limited doing any type of lifting or sitting for any length of time. She would be unable to bend, squat or crawl for any length of time. She would have difficulty in being around moving machinery. In addition, there is a possibility from her symptoms, that she may have a carpal-tunnel syndrome and this should probably be checked.
> Her prognosis is guarded as far as her hypertension is concerned, and this needs to be brought under control. (tr. 128).

Dr. Samuel Sugarman next examined the plaintiff on behalf of the Social Security Administration on April 30, 1980. In a report dated May 7, 1980, Dr. Sugarman's diagnosis listed the following: "(1) Hypertension, moderately severe; (2) Scoliosis, degenerative spine disease by history; and, (3) Gall bladder disease, by history." (tr. 132). Dr. Sugarman's prognosis was "Good". (tr. 132). Dr. Sugarman made no opinion as to whether or not the plaintiff could perform substantial gainful employment.

Dr. Leon Cander examined the plaintiff on or before July 30, 1979, when his report of that examination was filed. Dr. Cander's "impression" stated:

> This patient does not have pulmonary disease as the cause of the mild dyspnea that she complains of. *Moderately severe arterial hypertension is present* which has not resulted in significant retinopathy nor is there any evidence of renal insufficiency. However, *the diastolic pressure is high and the patient requires more intensive anti-hypertensive therapy to bring the diastolic pressure down below 90 mms of mercury pressure.* There is mild lumbar scoliosis convexed to the right, however, I was unable to determine any objective evidence of musculoskeletal disease which should impair this patient's ability to be gainfully employed. *Once the blood pressure has been controlled,* I should find no reason why this patient cannot be gainfully employed. (emphasis added) (tr. 123–124).

From the evidence stated above, the ALJ concluded: "In the instant case the medical record in total does not support a finding of disability." (tr. 14). In support of this conclusion, the ALJ stated, "Also of interest, Dr. Cander could find no reason why this claimant could not be gainfully employed ..." (tr. 13). Dr. Cander did not, in fact, render such an unqualified prognosis. Dr. Cander clearly stated that the controlling of the hypertension was a prerequisite to this plaintiff's ability to be gainfully employed. The blood pressure has not been controlled and has been diagnosed by every

---

1. It should be noted that the opinion of a treating physician is entitled to more weight than that of a one-time examiner. *Arnold v. Secretary of HEW*, 567 F.2d 258 (4 Cir. 1977); *Jones v. Harris*, 497 F.Supp. 161 (E.D.Pa.1980); *Minor v. Califano* [609 F.2d 1265] (E.D.Pa. January, 1979) (Newcomer, J.) (unpublished opinion). Likewise the opinion of the treating physician is entitled to "great weight." *Twardesky v. Weinberger*, 408 F.Supp. 842 (W.D.Pa.1976).

physician of record to do so as either "moderately severe"[2] or "uncontrolled".[3]

The medical evidence can thus be summarized as follows. The treating physician, who was the last to examine the plaintiff, finds the plaintiff "unable to work." (tr. 138). Dr. Cander finds the plaintiff able to work only if the blood pressure has been controlled. This having not occurred, it can be assumed that Dr. Cander would also find the plaintiff unable to be gainfully employed. Dr. Getzoff's characterization of the plaintiff's hypertension is even more severe than Dr. Cander's and his opinion that the plaintiff is unable to bend, squat, crawl, lift or even sit for "any length of time" (tr. 128) clearly suggests that the plaintiff is unable to work at her past jobs as a file clerk or terminal operator.[4] Dr. Sugarman also found the hypertension to be not under control and although his prognosis was a somewhat anomalous "good", he stated no opinion as to whether or not the plaintiff could perform substantial gainful employment. Dr. Camnitz's report was limited to diagnosing x-rays of the plaintiff and it contained no opinion regarding the ability of the plaintiff to work.

As the analysis above indicates, not only is there a lack of substantial evidence in the record to support the finding of the ALJ, but there is also uncontradicted medical testimony to the contrary. As was stated in *Fowler v. Califano*, 596 F.2d 600, 603 (3 Cir. 1979), "an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence." Likewise, "An ALJ may not make purely speculative inferences from medical reports." *Smith v. Califano, supra* at 972. Absent medical testimony indicating that the plaintiff could perform substantial gainful employment or testimony from a vocational expert[5] stating that the plaintiff could, in light of her present physical condition, perform her former employment, the ALJ had no basis for finding that the plaintiff could perform her former work and was thus not disabled within the meaning of the Act.[6]

In light of the above determination, the only remaining issue to be decided is whether this case should be remanded or reversed with summary judgment entered for the plaintiff. See *Smith v. Califano, Id., Kattes v. Califano*, 496 F.Supp. 385 (E.D.Pa.1980). The decision of whether or not an action should be remanded is one within the discretion of the Court. *Birchfield v. Harris*, 506 F.Supp. 251, 252 (E.D.Tenn.1980), *Davis v. Califano*, 437 F.Supp. 978, 980 (N.D.Ill. 1977).[7]

2. Dr. Cander, report of July 30, 1979, (tr. 123); Dr. Sugarman, report of May 7, 1980. (tr. 132).

3. Dr. Getzoff, report of March 5, 1980. (tr. 128).

4. The ALJ summarized these jobs as follows: Her (plaintiff's) job as a file clerk involved walking four hours, standing two hours and sitting approximately three hours a day. Occasional bending and reaching was required as well. There was no lifting and carrying. As a terminal operator, she sat the entire eight hour day, with occasional bending, no reaching nor any lifting or carrying. These jobs can be categorized as sedentary to light, and semi-skilled. (tr. 10).

5. It should also be noted that the decision of the Secretary in this case is improper for a second reason. The ALJ's decision is void of any meaningful analysis as to why medical evidence supporting the plaintiff's claim of disability, particularly the report of Dr. Getzoff, was rejected. As such, the ALJ acted in contravention of the directive that "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706–707 (3 Cir. 1981).

6. Where a plaintiff has exertional and nonexertional ailments such as exist in this case, a vocational expert is required and the ALJ cannot rely solely on the regulations. *Powell v. Harris* [Schweiker], 516 F.Supp. 1001 (W.D. Ark.1981); *Pitock [Pitcock] v. Schweiker*, [520] F.Supp. [1117] (E.D.Ark., August 27, 1981); *Allen v. Schweiker* (N.D.Cal., September 10, 1981).

7. 42 U.S.C. § 405(g) states in part: The court … may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

476

The plaintiff in this case underwent physical examinations by five (5) doctors, testified at the hearing and produced a corroborating witness. As the above analysis of this evidence indicates, the plaintiff fully met her burden of proving an inability to perform her past work. It was the Secretary who failed to carry his burden of proving that there existed specific employment which the plaintiff could perform. See *Kattes v. Califano, Id.* at 389. While it is possible that the Secretary deemed unnecessary the evaluation of the plaintiff's ability to do other work (the "fifth step" of the medical-vocational regulations, 20 C.F.R. § 404.1520(f)), the failure to do so in this case does not warrant a remand. The uncontradicted medical evidence supports the plaintiff's claim of an inability to perform *any* substantial employment, not just her past "sedentary to light, and semiskilled" work. (tr. 10).

It should also be noted that the deficiencies in the ALJ's findings are in no way attributable to any fault of the plaintiff and a remand would only further delay the collection of an award by the plaintiff, whose application for disability benefits was filed over twenty-seven (27) months ago. See *Smith v. Califano, supra*, note 1 at 972.

Accordingly, we make the following

RECOMMENDATION

Now, this 1st day of October, 1981, IT IS RESPECTFULLY RECOMMENDED that the plaintiff's motion for summary judgment should be GRANTED and the defendant's cross-motion for summary judgment should be DENIED and that the matter be REMANDED to the Secretary for a calculation of benefits and an award thereof to the plaintiff.