John T. KENT, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 91–G–1199–W.

United States District Court, N.D. Alabama, W.D.

Feb. 25, 1992.

Robert Allen Morgan, Tuscaloosa, Ala., for plaintiff.

Frank W. Donaldson, U.S. Atty., Linda Sullivan Trippe, Asst. U.S. Atty., Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

GUIN, Senior District Judge.

The plaintiff, John T. Kent, brings this action pursuant to the provisions of section

205(g) of the Social Security Act [the Act], 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Secretary of Health and Human Services [the Secretary] denying his application for disability and disability insurance benefits. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Act, as amended, was filed March 3, 1989, alleging onset of disability beginning April 18, 1988. Plaintiff's application was denied administratively, as well as his request for consideration. Plaintiff sought and received a *de novo* hearing before an administrative law judge [hereinafter ALJ]. On June 26, 1990, the ALJ found that plaintiff was entitled to a partially favorable decision for a period of disability benefits. The decision of the ALJ became the final decision of the Secretary when on March 27, 1991, the Appeals Council declined to review the ALJ's decision. An appeal to this court followed.

Mr. Kent is a 46 year old man with an eighth grade education.[1] From 1975 though the early part of 1988 he worked consistently in heavy exertion, semi-skilled jobs as a truck driver, carpenter, and roofer.

On April 18, 1988, plaintiff injured his knee at work when he fell from a truck. Thereafter, on April 26, 1988, Dr. Earl Hillard performed surgery to repair right knee internal derangement. The pathological consultation regarding the tissue taken from the knee revealed focal myxoid degeneration. Postoperative infection required additional arthroscopic surgery in August 1988.

In spite of a vigorous physical therapy program claimant's condition did not improve. By November 1988 Dr. Hillard noted severe quadriceps atrophy and weakness. A CT scan revealed the following:

1. Post anterior fusion at L4–5 with moderate hypertrophic changes of the facet joints at this level without evidence of spinal stenosis;

2. Diffuse bulging of disc at L3–4 with definite evidence of disc herniation; and,

3. Bulging of the disc at L5–S1 along with mild scoliosis, convexed to the left, at this level.

By January the claimant's workmen's compensation carrier was attempting to have Dr. Hillard declare Mr. Kent had reached maximum medical improvement. On January 18, 1989, the doctor contacted the carrier with the news that plaintiff could be released for light duty at work if such work existed.

Knee problems continued. Mr. Kent consulted Dr. Blair Behringer, orthopaedic specialist. Dr. Behringer performed an MRI on claimant's knee on February 24, 1989, and found the following:

1. Osteoarthritis of the right knee with advanced cartilage loss in the medial and lateral compartments with mild lateral subluxation of the tibia;

2. Anterior cruciate ligament not identified associated with buckling of posterior cruciate ligament—findings felt to indicate anterior cruciate ligament tear, probably chronic;

3. Mild joint effusion; and

4. Virtual absence of mid portion of medial meniscus compatible with chronic degeneration or prior surgery. Intrameniscal degeneration is noted within the posterior horn with a small oblique tear extending to the inferior articular surface.

Continued knee problems resulted in surgery on May 29, 1989, at which time Dr. Behringer performed an articular reconstruction of the torn anterior cruciate. Follow-up treatments continued thereafter. Dr. Behringer prescribed Darvocet 100 for pain. At the time of the administrative hearing Mr. Kent was taking 8 to 9 Darvocet 100s per day for pain.

During his testimony Mr. Kent rated his knee pain between a 7 and 8 on a pain scale of 10. He testified back pain reached intolerable levels if he sat for prolonged periods.[2] He complained of hearing, sight, and

---

1. The claimant was 44 years old at the time of the administrative hearing.

2. The record indicates the claimant had a lumbar laminectomy and fusion performed over 20

nerve problems. While medical problems prevented his doing things around the house that he formerly did he admitted that he periodically "piddled" with small engines while sitting on his porch.[3]

Dr. David Head, vocational expert, classified Mr. Kent's prior work as medium to heavy in exertional level and ranging between semi-skilled for the truck and tractor driving and the lower end of semi-skilled for the construction jobs. In answer to the ALJ's hypothetical question[4] he testified that a person in Mr. Kent's condition could engage in light or sedentary work. Upon further questioning, however, he indicated that a person suffering from pain at the moderately severe level on a sustained and consistent basis with a residual capacity to sit or stand for a combined total of six hours would be unable to work.

Dr. Mary Altz–Smith, rheumatologist, conducted a consultative examination, concluding that Mr. Kent's "arthritis involving the lumbar spine and knee would prevent him from participating in jobs which required prolonged weight bearing or repetitive motions with the right lower extremity," but that he could perform sedentary activities or those which required intermittent walking.

The ALJ found claimant's pain to be moderate as long as he was limited to light work and not severe enough to prevent him from doing sedentary work. Having considered the record on appeal, this court reverses the decision of the ALJ.

██ In making a determination of disability the ALJ must consider the following factors: "(1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, ...; and (4) the claimant's age, education, and work history." *Boyd*

*v. Heckler*, 704 F.2d 1207, 1210 (11th Cir. 1983).

The record establishes an underlying medical condition causing pain. In evaluating the evidence the ALJ stated:

The medical evidence shows that the claimant currently suffers from residual pain in his right knee as a result of arthritis and prior knee surgery and that he has chronic low back pain as a result of arthritis which significantly limit[s] the claimant's ability to engage in work activities. These impairments are therefore "severe" impairments as defined in the Social Security Act.

These findings are consistent with the findings of the CT scan, the MRI, and the treating physicians. Even so, the ALJ determined that Mr. Kent's "severe" impairments did not meet or equal the impairments in the Listings.

██ The law is clear that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Eleventh Circuit has gone further to hold that where the Secretary ignores or fails to properly refute a treating physician's report, the findings of that report are to be accepted. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

The ALJ belies the opinion expressed by Dr. Behringer[5] in medical reports that the plaintiff continued to suffer objective pain with subjective reaction. She places reliance, instead, on the doctor's expressed opinion that he was pleased with the claimant's progress. Dr. Behringer was treating Mr. Kent for his workmen's compensation injury only. His opinion was not an assessment of the claimant's physical condition as a whole. Consequently, his notes

years ago. Evidence of arthritis, degenerative changes, bulging discs, and focal scoliosis in the back were evident from the CT scan.

3. At the time of the hearing Mr. Kent was still receiving workmen's compensation temporary total disability checks. Since denial of disability and disability benefits he has applied for and is receiving Supplemental Security Income payments.

4. The question posed to Dr. Head ignored the effect the presence of pain would have on the ability to work.

5. Dr. Behringer was Mr. Kent's treating physician at the time of the hearing.

544

do not reflect references to the patient's pain associated with arthritis in the knee and lower back.

■ The ALJ's failure to properly refute the opinions of Mr. Kent's treating physicians and to properly refute the results of the CT scan and MRI which showed moderate degenerate changes is error. In *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979), the court held that while expert medical opinions are not binding on the ALJ "he may not arbitrarily choose to ignore uncontroverted medical testimony." The ALJ placed her reliance on the opinion of Dr. Mary Altz–Smith, a consultative physician, that degenerative changes in the plaintiff's knee and back would prevent sedentary work. *See Jones v. Schweiker*, 524 F.Supp. 739 (N.D.Ala.1981), in which this court concurred with the holding in *Hancock v. Secretary of Dept. of H.E.W.*, 603 F.2d 739, 740 (8th Cir.1979), when it said: "[T]he report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician."

■ Not only did the ALJ refuse to give proper weight to the medical findings; she refused to give credence to the subjective complaints of pain. Subjective complaints of pain may be disabling where an underlying medical condition may "reasonably be expected to produce pain or other symptoms." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986). In *Sewell v. Bowen*, 792 F.2d 1065, 1068 (11th Cir.1986), the court noted:

> The new statutory standard for evaluation of pain does not provide a license to the Secretary to deny disability claims where medical evidence in the record clearly indicates the existence of a medical impairment which could reasonably be expected to produce disabling pain. In this situation, the fact finder must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony.

(quoting *Hand v. Heckler*, 761 F.2d 1545, 1549 n. 6 (11th Cir.1985)). *See Scharlow v. Schweiker*, 655 F.2d 645 (5th Cir.1981) (— Where claimant alleges disabling pain, the ALJ must assess credibility and indicate the basis for his credibility decision); *Scarlata v. Schweiker*, 533 F.Supp. 469 (E.D.Pa.1982) (It is incumbent upon the ALJ to furnish an explanation as to why some evidence is accepted and found credible while other evidence and the testimony of the claimant is found unbelievable). She based her opinion for discrediting the plaintiff's testimony concerning pain on his demeanor during the hearing and on her opinion that Mr. Kent's daily activities were too extensive for the pain level he alleged. She did not, however, address what it was about his demeanor that indicated his pain was not disabling. She did not discuss what there was in the objective medical evidence to indicate that pain could not be reasonably expected. Her opinion seems to be based on her observation of Mr. Kent's tanned, muscular body and greasy hands.

■ The court is of the opinion that the underlying medical conditions could reasonably be expected to produce the pain alleged. When all the evidence is considered Mr. Kent was clearly suffering from several medically determined impairments that could reasonably be expected to produce the pain he described.

For the reasons set forth above the decision of the Secretary should be reversed. Mr. Kent should be allowed benefits sought on an ongoing basis instead of the closed period of disability.

DONE and ORDERED.