Jack C. GIVENS, on behalf of himself
and all others similarly
situated, Petitioner,

v.

UNITED STATES RAILROAD RETIRE-
MENT BOARD, Respondent.

Walter A. WELLS, on behalf of himself
and all others similarly
situated, Petitioner,

v.

UNITED STATES RAILROAD RETIRE-
MENT BOARD, Respondent.

James L. ROBBINS, on behalf of himself
and all others similarly
situated, Petitioner,

v.

UNITED STATES RAILROAD RETIRE-
MENT BOARD, Respondent.

Elmer F. LORMAN, Petitioner,

v.

UNITED STATES RAILROAD RETIRE-
MENT BOARD, Respondent.

Charles E. FORSETH, Petitioner,

v.

UNITED STATES RAILROAD RETIRE-
MENT BOARD, Respondent.

Nos. 82–2183 to 82–2185, 82–2312
and 82–2313.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 26, 1983.

Decided Oct. 28, 1983.

Gill Deford, Los Angeles, Cal., for petitioners.

Thomas W. Sadler, General Atty., Railroad Retirement Board, Chicago, Ill., with whom Dale G. Zimmerman, General Counsel, and Edward S. Hintzke, Asst. General Counsel, Railroad Retirement Board, Chicago, Ill., were on the brief for respondent.

Before GINSBURG and SCALIA, Circuit Judges, and VAN PELT,* Senior District Judge, United States District Court for the District of Nebraska.

Opinion for the Court filed by Senior District Judge VAN PELT.

VAN PELT, Senior District Judge:

Petitioners challenge the application of Section 3(h)(6) of the Railroad Retirement Act (RRA), 45 U.S.C. § 231b(h)(6), by the United States Railroad Retirement Board (the Board) to their individual cases. The Board's interpretation of Section 3(h)(6) resulted in the railroad retirement annuities of petitioners being reduced by the amount of spousal benefits they received under the Social Security Act (SSA). After careful analysis, we conclude that Section 3(h)(6) was properly applied and that the Board was correct in denying dual benefits to these petitioners.

Of the five petitioners, only one, Jack C. Givens, is clearly and properly before this court. In view of our disposition of the merits of his claims, we need not decide whether this court has jurisdiction to entertain the claims of the other petitioners.[1] Petitioner Givens raises the following issues on appeal:

1. Whether the refusal of the respondent Railroad Retirement Board to replace petitioners' Railroad Retirement benefits, reduced by the Board pursuant to 45 U.S.C. § 231b(m), violates section 3(h) of the Railroad Retirement Act, 45 U.S.C. § 231b(h).

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The cases of the other four-named petitioners (James L. Robbins, Walter A. Wells, Elmer F. Lorman, and Charles E. Forseth) are arguably flawed due to the failure of petitioners to exhaust their administrative remedies and/or file a timely appeal.

2. Whether the refusal to replace these benefits is violative of equal protection and due process guarantees embodied in the due process clause of the Fifth Amendment.

3. Whether this case should proceed as a class action on behalf of all other men whose railroad benefits were offset by Social Security spousal benefits and not returned pursuant to 45 U.S.C. § 231b(h)(3) and (4), with petitioners Givens, Wells, and Robbins acting as class representatives.

## I. BACKGROUND

The Railroad Retirement Act of 1937, 49 Stat. 967, 45 U.S.C. § 228a *et seq.,* established "a system of retirement and disability benefits for persons who pursued careers in the railroad industry." *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 168, 101 S.Ct. 453, 456, 66 L.Ed.2d 368 (1980). The 1937 Act allowed persons who worked for the requisite number of years in both the railroad industry and in outside employment covered by the SSA to receive benefits from both systems in excess of what they would have received had they worked exclusively within only one system. *Fritz, supra,* at 168 n. 1, 101 S.Ct. at 456 n. 1.

These dual benefits put a significant strain on the financial well-being of the railroad retirement system. Congress attempted to meet this problem with the passage of the Railroad Retirement Act of 1974, 45 U.S.C. § 231 *et seq.,* which was designed to eliminate future accruals of dual benefits. *Fritz, supra,* at 169, 101 S.Ct. at 456. Section 3(m) of the Act, 45 U.S.C. § 231b(m),[2] reduces railroad retirement benefits by the amount of benefits which the retiree receives under the SSA. Section 3(h) of the Act, 45 U.S.C. § 231b(h), preserves dual benefits for those railroad

workers who were so entitled under the SSA "as in effect on December 31, 1974."

Here, we are primarily concerned with section 3(h)(3) and (4). These two subsections maintain dual benefits for those railroad workers who are entitled to *spousal* benefits under the SSA "as in effect on December 31, 1974." Therefore, under the new Act, a retiree's eligibility for spousal benefits depended on the application of the Social Security Act as it existed on December 31, 1974.

The problem we are addressing in this case begins with *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), where the Supreme Court held that a provision of the SSA which required husbands, but not wives, to prove dependency on the insured spouse in order to receive spousal benefits, violated the Fifth Amendment. In order to meet the dictate of *Goldfarb,* the Board provided all railroad workers, both male and female, with spousal social security benefits. In most cases, the net effect upon a retiree's benefit package is nil because the worker's railroad retirement annuity is reduced, pursuant to section 231b(m), by an amount equal to the spousal benefit received. However, under Section 231b(h)(3) and (4), the Board does pay dual benefits to those railroad workers whose spouses were "permanently insured under the Social Security Act on December 31, 1974" and who satisfied the eligibility requirements "under the provisions of the Social Security Act as in effect on December 31, 1974." Thus, under the Board's interpretation of this language, the dependency provisions of the Social Security Act which were found to be constitutionally infirm in *Goldfarb* were to be used in order to determine which persons in this limited group of retirees would be eligible for dual benefits.

In *Gebbie v. United States Railroad Retirement Board,* 631 F.2d 512 (7th Cir.

---

**2.** Section 231b(m) provides:

The annuity of any individual under subsection (a) of this section for any month shall, after any reduction pursuant to paragraph (iii) of section 231a(a)(1) of this title, be re-

duced, but not below zero, by the amount of any monthly benefit (before any deductions on account of work) payable to that individual for that month under title II of the Social Security Act.

1980), the United States Court of Appeals for the Seventh Circuit held that the Board had incorrectly interpreted Section 231b(h)(3) and (4) and that the dependency requirements found invalid in *Goldfarb* should not be applied as a basis for denying dual benefits. The *Gebbie* court declined to certify a class action and the decision immediately addressed only the claims of the three named petitioners. *Id.* at 516 n. 9. The Board refused to apply the *Gebbie* decision to other railroad retirees.

Congress addressed the problems raised by *Gebbie* in the Omnibus Budget Reconciliation Act of 1981 (OBRA), Public Law 97–35, 95 Stat. 357. Section 1118(e)(3) of OBRA added Section 3(h)(6) to the RRA, 45 U.S.C. § 231b(h)(6). Section 3(h)(6) provides: "No amount shall be payable to an *individual* under subdivisions (3) or (4) of this subsection unless the entitlement of such *individual* to such amount had been *determined* prior to August 13, 1981." (Emphasis supplied). The purpose and meaning of Section 3(h)(6) were explained by the Report of the Conference Committee on the OBRA which adopted Section 3(h)(6) from the Senate version of the OBRA:

> The Senate amendment addressed the *Gebbie* issue by providing that no new windfalls would be payable in connection with annuities awarded after May, 1981, or the enactment date, to any employee based on a spouse's Social Security Act employment. The intent of the provision "unless entitlement of such individual to such amount had been determined prior [sic] the date of the enactment of this subdivision" is to cut off windfall awards in all cases where the processing has, for whatever reason, not been completed and the determinations have not been made.

H.R.Rep. No. 97–208, 97th Cong., 1st Sess. 863, *reprinted in* [1981] U.S.Code Cong. & Ad.News 396, 1010, 1225.

In *Frock v. United States Railroad Retirement Board,* 685 F.2d 1041 (7th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct.

1185, 75 L.Ed.2d 432 (1983), the Seventh Circuit upheld the constitutionality of section 3(h)(6) and its application by the Board to deny dual benefits to the *Frock* petitioners whose entitlements to dual benefits had not been determined prior to August 13, 1981. In addition, the court made it clear that its decision in *Gebbie* was limited to the petitioners in that case. *Frock, supra* at 1046.

Petitioner Givens, a retired railroad worker, became eligible for an annuity under the RRA on January 24, 1975. His spouse became insured under the Social Security Act, 42 U.S.C. § 301 *et seq.,* prior to January 1, 1975. On December 11, 1978, Givens received notice that, as a result of *Goldfarb,* he was entitled to receive spousal benefits, but because of the RRA offset provision, Section 3(m), his total benefit package would not change. He made a number of inquiries and was told that he could not receive dual benefits because he was not vested under the SSA prior to January 1, 1975. He filed a formal appeal with the Board on April 15, 1980.[3] On November 10, 1981, the Board denied his appeal, holding that his eligibility for dual benefits had not been determined prior to the August 13, 1981, OBRA cutoff date. The Board explained:

> No determination as to his entitlement to a windfall dual benefit has been made in regard to Mr. Givens prior to the resolution of this appeal, either by the Board or by a court. *Gebbie* was not a class action, and therefore applied only to the three individuals involved in that case. Thus, in effect, section 1118(e)(3) preserves windfalls only for those individuals whose entitlement to such windfalls was determined prior to August 13, 1981, either under the Board's interpretation of that section or by virtue of a court order as was the case with Mr. Gebbie.

On appeal, Givens challenges the application and constitutionality of section 3(h)(6).

---

**3.** The time for appeal had run. However, the appeals referee determined that Givens had, to some extent, been discouraged from appealing and that this constituted "good cause for a waiver of the time limitations."

## II. Decision

### A. *The Board's Interpretation*

Petitioner first claims that the Board improperly interpreted sections 3(h)(3), 3(h)(4), and 3(h)(6). More specifically, petitioner argues that: (1) the Board was bound by the *Gebbie* interpretation of sections 3(h)(3) and 3(h)(4); (2) *Gebbie* established entitlement for the entire group of similarly situated railroad retirees; and, (3) section 3(h)(6) should be interpreted in a manner consistent with the *Gebbie* decision in order to avoid the grandfathering of an improper construction. After careful consideration of these arguments, we affirm the Board's interpretation and application of section 3(h)(6).

Petitioner overestimates the force and scope of *Gebbie.* First, the *dispositive* effect of *Gebbie* was clearly limited to the three petitioners involved in that case. The *Gebbie* court specifically refused to certify a class for the reason that the court was "not an appropriate forum for such action." *Gebbie, supra,* at 516 n. 9. In *Frock, supra,* the Seventh Circuit explicitly stated that *Gebbie* "decided only the entitlement of the individual petitioner in that case." *Id.* at 1046.

Secondly, *Gebbie* was only the decision of one circuit court and, although it must be given deference, it need not be taken by the Board as the law of the land. The Seventh Circuit rejected this role of the "ultimate decisionmaker" when it stated that to conclude otherwise would be to make decisions of the Seventh Circuit binding on all other circuits "simply because it was the first court presented with the issue." *Id.* (footnote omitted). "Federal appellate courts can, and do, differ in their conclusions as to the law affecting agency action." *Id.* That is what makes horseraces and Supreme Court cases.

As noted by the *Frock* court, the *Gebbie* petitioners had three choices as to the circuit in which they could bring their claims.[4]

*Id. Gebbie* bound the Board only as to the three named petitioners. Subsequent petitioners could continue to challenge the Board's interpretation as in *Shuff v. United States Railroad Retirement Board,* No. 80–2791 (7th Cir. Apr. 9, 1981), where, in an unpublished order, the Seventh Circuit summarily reversed the Board, followed *Gebbie,* and determined the entitlement of the petitioner to dual benefits. However, until the appearance of more far-reaching precedent, the Board was free to continue to apply its interpretation of sections 3(h)(3) and 3(h)(4).

Finally, the subsequent legislative history connected with the OBRA and section 3(h)(6) makes it clear that Congress believed the Board's interpretation of 3(h)(3) and 3(h)(4) to be correct.

The Board, as required by the 1974 Act, reduced the annuity of these employees by the amount of the newly awarded social security benefits. The Board determined that the Social Security Act as in effect in 1974 (which is the measure of the "windfall" component) is zero because such nondependent males could not have qualified for a husband's social security benefit in 1974. The Court in *Gebbie* reversed the Board's determination in the case, saying, in effect, that the Social Security Act "as in effect in 1974" should be interpreted in the light of the 1977 decisions. The House bill thus amended the law to make clear that the phrase "the Social Security Act as in effect on December 31, 1974" is intended to mean "the Social Security Act as it was in effect and being administered on December 31, 1974."

H.Conf.Rep. No. 97–208, 97th Cong., 1st Sess. 863, *reprinted in* [1981] U.S.Code Cong. & Ad.News 1010, 1225.

■ In conclusion, we believe that the Seventh Circuit in *Frock,* in denying dual benefits to individuals whose entitlement to them had not been determined prior to August 13, 1981, applied section 3(h)(6) precisely as Congress intended.

---

4. Under 45 U.S.C. § 231g and 45 U.S.C. § 351 *et seq.* petitioners may file suit in the court of appeals for the circuit in which they reside, in the District of Columbia Circuit, or in the Seventh Circuit, 45 U.S.C. § 355(f).

### B. The Due Process Claims

Petitioner argues that the Board's failure to provide him with a favorable determination of entitlement prior to the running of the time limits imposed by section 3(h)(6) violated the due process clause of the Fifth Amendment. We do not agree.

As discussed above, the Board was under no obligation to give petitioner a *favorable* determination of entitlement. Therefore, the question we here address is whether the Board violated petitioner's due process rights by not making some type of determination prior to August 13, 1981, the cutoff date provided by section 3(h)(6).

Petitioner relies primarily on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In *Logan*, the Court held that the failure of a state agency to hold a statutorily mandated hearing within the time limits imposed by that statute deprived Logan of a property right without due process.

The major difference between *Logan* and this case is that in *Logan*, the state agency was required by statute to hold a hearing within 120 days. Thus, Logan had an entitlement interest in having his claim heard within the statutory time limit. Here, however, section 3(h)(6) imposes no such obligation on the Board. Section 3(h)(6) only provides that in order to receive dual benefits, an individual must have been determined prior to August 13, 1981, to be entitled to such benefits. Thus, section 3(h)(6) does not provide petitioner with a due process right to have had his entitlement determined prior to the cutoff date. Therefore, there was no procedure or process denied petitioner which was due him. *Frock, supra* at 1047.

In addition, we note that the time between the filing of Givens' appeal on April 15, 1980, and the Board's decision on November 10, 1981, was not so unreasonable as to violate due process. *See Frock, supra,* at 1047 n. 13. *Cf. Kelly v. Railroad Retirement Board,* 625 F.2d 486 (3d Cir.1980) (delay of three years, nine months, in processing disability claim without valid reason held to violate due process guarantees). Our conclusion in this regard is further supported by a lack of evidence that the Board "deliberately delayed action on [Givens' application] in anticipation of the passage of section 3(h)(6)," *Frock, supra,* at 1047 n. 13, or as an attempt to take advantage of the running of the time limits in that section. In sum, the Board's actions did not violate Givens' due process rights.

### C. Equal Protection: Rational Line Drawing

Petitioner next argues that section 3(h)(6) violates the equal protection principle of the Fifth Amendment [5] by creating a classification system based upon the determination of entitlement by a specific date. Petitioner's claim focuses on the fact that an award of dual benefits under section 3(h)(6) is dependent upon the actions of the Board rather than upon some type of work-related criteria conceivably within the control of the retiree. Thus, petitioner argues, Congress and the Board have drawn an irrational line between those persons who are and are not entitled to dual benefits.

Much of lawmaking is inherently a process of line drawing. Inevitably, when such a line is drawn, there will exist persons who have fallen just short of the mark and who are not eligible for the protection or benefits provided by the law.

Here, in an attempt to preserve the economic stability of the railroad retirement system by phasing out dual benefits, Congress chose to draw a line based upon whether entitlement to dual benefits had been determined before August 13, 1981, the date of the enactment of section 3(h)(6). After having analyzed this line drawn by Congress, we cannot say that it violates the equal protection principle.

---

5. Although the language of the Fifth Amendment does not explicitly include an equal protection clause, the implied existence of such a principle has long been recognized as a part of the due process clause. *See Fritz, supra,* 449 U.S. at 173 n. 8, 101 S.Ct. at 458 n. 8; *Schneider v. Rusk,* 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964).

"[U]nlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time." *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 575, 99 S.Ct. 802, 805, 59 L.Ed.2d 1 (1978) (footnote omitted). *See Fritz, supra,* 449 U.S. at 174, 101 S.Ct. at 459. Therefore, "we must recognize that the due process clause can be thought to impose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Goldfarb, supra,* 430 U.S. at 210, 97 S.Ct. at 1028. *See Fritz supra,* 449 U.S. at 174–77, 101 S.Ct. at 459–60.

With this standard of review in mind, we find ourselves in agreement with the *Frock* court that section 3(h)(6) does not establish a wholly irrational classification. As discussed above, Congress sought to protect the railroad retirement system. Arguably, Congress could have eliminated all dual benefits. However, instead, it chose to recognize and protect "expectations created by court decisions and Board actions. Consideration of such expectations is a legitimate concern of Congress." *Frock, supra,* at 1047.

D. *Equal Protection: Gender Based Discrimination*

■ In his last substantive claim, Petitioner argues that 3(h)(6) violates the equal protection principle in that it improperly insulates the dependency requirements found unconstitutional in *Goldfarb.* We do not agree.

In *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), the Court articulated a two-part test to determine if such a statute improperly discriminated on the basis of sex. The Court stated:

The first question is whether the statutory classification is indeed neutral in the sense that it is not gender based. If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination.... In this second inquiry, impact provides an

"important starting point," ... but purposeful discrimination is "the condition that offends the Constitution."

*Id.* at 274, 99 S.Ct. at 2293. (citations omitted) (quoting *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 16, 19, 91 S.Ct. 1267, 1276, 1277, 28 L.Ed.2d 554 (1971)).

Here, it is apparent this section 3(h)(6) has a nondiscriminatory purpose and is, thus, not covertly gender-based. *Frock, supra,* at 1048. By way of section 3(h)(6), Congress sought to preserve the solvency of the railroad retirement system by phasing-out dual benefits and by limiting the application of *Gebbie. Frock, supra,* at 1049.

Nor do we conclude that section 3(h)(6) "reflects invidious, gender-based discrimination." *Feeney, supra,* 442 U.S. at 274, 99 S.Ct. at 2293. In order to achieve its economic purpose, Congress sought to phase out dual benefits for both men and women. The record simply does not support the argument that Congress "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 279, 99 S.Ct. at 2296.

E. *Request for Class Certification*

■ Petitioner requests that this Court certify a class defined as follows:

All past and present male railroaders who have had or will have their Railroad Retirement benefits reduced by the amount of the Social Security benefits received by them, and who meet the requirements imposed under §§ 3(h)(3) or 3(h)(4) of the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231b(h)(3) or (h)(4), for entitlement to a dual benefit, but who have been, or will be, denied this benefit by the Railroad Retirement Board based on its interpretation of § 3(h)(3), (4) or (6).

Motion of Petitioners Givens, Wells, and Robbins for an Order Certifying the Class and Memorandum in Support at 1–2.

In light of our recent decision in *Burns v. United States Railroad Retirement Board,*

701 F.2d 189 (D.C.Cir.1983), we deny petitioner's motion. There, in response to a similar request for class certification, we noted that the structure and duties of United States Courts of Appeals makes them inadequate to provide the type of supervision necessary for class actions. As we stated:

> Rather, we decline to fashion a class action vehicle because our appellate mode of proceeding is not compatible with designation and management of a class. We hear cases in three-judge panels and generally schedule a single argument session. Our province is the law; we do not hold hearings to explore fact questions. Class action certification, however, entails continuing court activity, and multiple decisions, some of them fact-based.

*Id.* at 191.

The rationale of *Burns* applies equally to the case at hand. As such, the motion for class certification is denied.

### III. CONCLUSION

For the above-stated reasons, we find that section 3(h)(6) was properly applied to the Petitioner, and that the section does not violate the Fifth Amendment. The decision of the Railroad Retirement Board is hereby affirmed.