Wallace M. CROWN, Petitioner,

v.

UNITED STATES RAILROAD RETIREMENT BOARD, Respondent.

No. 86–1583.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 31, 1986.*

Decided Jan. 29, 1987.

---

* This case was originally scheduled for oral argument on October 31, 1986, but petitioner's counsel was unable to appear. He subsequently filed a motion to waive oral argument. The motion was granted and the appeal has been submitted on the briefs and the record.

Roscoe D. Cunningham, Roscoe D. Cunningham, Ltd., Lawrenceville, Ill., for petitioner.

Steven A. Bartholow, U.S. R.R. Retirement Bd., Chicago, Ill., for respondent.

Before BAUER, Chief Judge,
POSNER, Circuit Judge, and PELL,
Senior Circuit Judge.

PELL, Senior Circuit Judge.

Wallace Crown petitions for review of the Railroad Retirement Board's (the Board) computation of his railroad retirement widower's annuity benefits. He argues that (1) the Board incorrectly calculated the amount of his widower's annuity and (2) that the doctrine of equitable estoppel should be invoked against the Board.

## I. FACTS

Wallace Crown, and his wife Deloris, were both railroad employees for over thirty years. In February 1982, Deloris Crown died. Shortly after his wife's death, Crown made contact with the Indianapolis branch of the Railroad Retirement Board to inquire about his eligibility for survivor benefits as the widower of a railroad employee and about his own benefits upon retirement. According to Crown, an employee at the Indianapolis branch informed him that he would be eligible for a widower's annuity when he attained the age of 60. He was also advised that he could elect to receive the widower's annuity as either a lump-sum settlement of approximately $10,930.18 or a monthly payment estimated at $650. On March 18, 1983, the district manager of the Indianapolis branch confirmed this information in a letter which estimated Crown's retirement annuity at $1,062 a month and his widower's annuity at $650 a month.

Relying on this letter and other conversations with employees at the Indianapolis branch, Crown retired in July 1983, at the age of 60. On July 5, 1983, he applied for retirement annuity benefits. Thereafter, he was awarded a retirement annuity of $1,208.52 with an effective date of July 1, 1983. On July 5, 1983, Crown also applied for widower's annuity benefits based upon his deceased spouse's earnings. Five months later, he received a letter informing him that he had been awarded a widower's annuity of $150.40 a month with an effective date of July 1, 1983.

Surprised at the difference between the amount his widower's annuity was estimated to be and the amount he was awarded, Crown wrote a letter to the Bureau of Retirement Claims. He requested an explanation for the reduction in his widower's annuity and reconsideration of the amount awarded. Crown informed the Bureau that several Board employees had estimated his widower's annuity to be approximately $500 a month more than he had been

awarded. Crown stated that he had passed up the lump-sum settlement and retired in reliance upon the higher estimate. The Bureau declined to reconsider their computation of his widower's annuity. On administrative appeal, the appeals referee affirmed the decision. The referee explained that Crown's widower's annuity had been reduced because of the retirement benefits Crown was also receiving.

Ultimately, the Board affirmed the referee's decision. But the Board also sent Crown a letter stating that because he had been misinformed about the amount of his widower's annuity when he decided to forego the lump-sum settlement, he would be allowed 90 days to file an election to receive the lump-sum settlement in lieu of future monthly widower's annuity benefits. Crown took no action on the offer. Instead, he petitioned this court for review of the Board's decision.

## II. THE AMOUNT OF CROWN'S WIDOWER'S ANNUITY

■ The first issue raised on appeal is whether the Board correctly determined that the amount of Crown's widower's annuity must be reduced by the amount of his retirement annuity. In deciding this issue, our review is limited to determining whether the Board's decision is supported by substantial evidence and has a reasonable basis in law. *Schafer v. Railroad Retirement Board,* 217 F.2d 874, 875 (7th Cir. 1954). In this case, the essential facts are not in dispute, thus, the question is whether the Board's determination has a reasonable basis in law. Because Congress has entrusted to the Board the primary responsibility for administering the Railroad Retirement Act, the Board's interpretation of the Act is entitled to deference. *See Environmental Protection Agency v. National Crushed Stone Association,* 449 U.S. 64, 83, 101 S.Ct. 295, 306, 66 L.Ed.2d 268 (1980); *E.I. Du Pont De Nemours & Co. v. Collins,* 432 U.S. 46, 54–55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977); *Itel Corp. v. United States Railroad Retirement Board,* 710 F.2d 1243, 1245 (7th Cir.1983).

■ 45 U.S.C. § 231a(d)(1)(i) of the Railroad Retirement Act entitles widowers of qualified deceased railroad employees to annuity benefits if the widower has not remarried and has attained the age of 60. Section 231a(d)(1) directs the Board to refer to § 231c to determine the amount of the annuity payment. A widower's annuity under § 231c consists of two tiers. The first tier is computed in accordance with § 231c(f)(1), which provides that the amount of the widower's annuity "shall be in an amount equal to the amount ... of the widower's insurance benefits ... to which he or she would have been entitled under the Social Security Act ... if the deceased employee's service as an employee after December 31, 1936, had been included in the term 'employment' as defined in that Act...." Thus, this first tier is the amount of the widower's benefit payable under the Social Security Act based upon the same earnings' period. The Social Security Act has its own distinct entitlements section, 42 U.S.C. § 402(f)(3)(A). This section entitles a person in Crown's situation to an annuity "equal to the primary insurance amount ... of his deceased wife." In this case, the Board computed Deloris Crown's primary insurance amount, after an age reduction, to be $487.

The first tier annuity amount may be reduced, however, under a provision of the Railroad Retirement Act, § 231c(i)(2), which provides that the widower's annuity must be reduced by the amount of the retirement benefits the widower is receiving. In this case, Crown's own primary insurance amount was $659. This amount exceeds the amount of Deloris Crown's primary insurance amount. Accordingly, the Board determined that under the Social Security portion of the computation (tier I), Crown was not entitled to any benefit.

■ The second tier of the widower's annuity is computed in accordance with § 231c(g) which provides for certain increases in the annuity amount derived from the first tier calculation. Section 231c(g) provides that a widower is entitled to an additional annuity amount which is 50% of

the deceased railroad worker's tier II amount. The Board found Deloris Crown's tier II amount, reduced by 50%, to be $181.42. After the age reduction required in the statute, the Board concluded that Crown was entitled to $150.40 under the tier II calculation. This is the amount Crown was awarded by the Board.

Crown does not point to any of the above computations as incorrect. Instead, he refers us to Railroad Retirement Board Booklet 1B–2 (1982), entitled Railroad Retirement Survivors Benefits for Railroad Workers and Families. This booklet, in a section entitled, Widows or Widowers Also Receiving Railroad Retirement Employee Annuities, states "[i]f a ... widower is qualified for a railroad retirement employee annuity as well as a survivor annuity, a special guarantee applies if either the deceased employee or the survivor annuitant completed 120 months of railroad service before 1975. In effect, the ... widower would receive both an employee annuity and a survivor annuity, without a full dual benefit reduction." Although Crown contends that both he and the Board's employees relied upon this section in estimating the amount of his annuity, he does not indicate how this language was applied incorrectly in his case. The Board takes the position that the phrase "without a full dual benefit reduction" means only that a widower's annuity will not be completely eliminated as is done in the case of dual social security benefits. Since Crown does not offer any other interpretation of the phrase and the Board has conceded that Crown received erroneous information from Board employees, we do not see how Crown's reliance upon this language aids his argument that the Board erroneously determined the amount of his widower's annuity benefits.

■ Crown also argues that he is entitled to the "restored amount" provided by § 231c(g)(4). Section 231c(g)(4) states, in relevant part:

If a ... widower of a deceased employee is entitled to an annuity under section 231a(a)(1) of this title and if either such ... widower or deceased employee will have completed 10 years of service prior to January 1, 1975, the amount of the annuity of such ... widower ... shall be increased by an amount equal to the amount, if any, by which (A) the ... widower's insurance annuity to which such ... widower would have been entitled, upon attaining age 65, under section 5(a) of the Railroad Retirement Act of 1937 [45 U.S.C. § 228e(a)], as in effect on December 31, 1974 ... exceeds (B) the total of the annuity amounts to which such ... widower was entitled (after any reductions pursuant to subsection (i)(2) of this section but before any deduction on account of work) under the preceding provisions of this subsection, subsection (f) of this section....

The Board asserts that the only widowers entitled to this "restored amount" are widowers who would have been entitled to an annuity under § 5(a) of the Railroad Retirement Act of 1937 as it was in effect and being administered on December 31, 1974. Under § 5(a) of the Railroad Retirement Act of 1937 (the 1937 Act), as it was being administered on December 31, 1974, Crown could not have qualified for a widower's annuity because he was a nondependent male.

The legislative history of § 231c(g)(4) indicates that Congress believed the Board's interpretation to be correct. The Committee report accompanying § 231c(g)(4) indicates that the amendment was technical. Its purpose was merely to eliminate certain unforeseen inequities that the Board had encountered in interpreting the 1974 Act. H.R. 1465, 94th Cong., 2d Sess. 17–19, *reprinted in* 1976 U.S.Code Cong. & Ad. News, 5601, 5617–19. The amendment provides for an increase in the tier II amount of a widow's or widower's annuity in a case where the 1937 Act would have provided a larger widow's or widower's annuity based on the deceased employee's service before 1975, than does the 1974 Act's formula after the tier I is reduced due to the widow's or widower's receipt of a railroad retirement employee's annuity. The increased amount is equal to the difference

between what the widow or widower would have received under the 1937 Act and the amount payable to the widow or widower under the 1974 Act, after tier I is reduced due to the widow's. or widower's receipt of a railroad retirement employee's annuity. Section 231c(g)(4) does not increase Crown's widower's annuity because he was a nondependent male and under the 1937 Act was not entitled to any annuity.[1]

## III. EQUITABLE ESTOPPEL

 Crown also contends that the Board should be equitably estopped from denying him full benefits because he took an early retirement based on Board employees' incorrect estimates as to the amount of his widower's annuity. The general rule is that reliance on misinformation provided by a government employee does not provide a basis for an estoppel. *Cheers v. Secretary of Health, Education and Welfare,* 610 F.2d 463, 469 (7th Cir.1979), *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980); *Gressley v. Califano,* 609 F.2d 1265, 1267 (7th Cir.1979) (citing cases). But the doctrine of estoppel has been applied to the federal government in certain narrow circumstances. *See Azar v. United States Postal Service,* 777 F.2d 1265 (7th Cir.1985) (estoppel may be applied when the Postal Service's express mail is involved); *Portmann v. United States,* 674 F.2d 1155 (7th Cir.1982) (same); *United States v. Fox Lake State Bank,* 366 F.2d 962 (7th Cir.1966) (FHA estopped to recover statutory forfeitures and statutory double damages under the Civil False Claims Act when it specifically encouraged a mistake of which it then took advantage). This case, however, does not fall within the above narrow circumstances. "A congressional mandate to pay statutory benefits only to those so entitled presents a different case. Congress leaves no discretion in the agencies and courts but to limit the payment of benefits to those statutorily entitled to them. * * * Were we to estop the government in the present case, we would be interfering with the duty of administrative agencies and courts to follow the mandate of Congress and limit the payment to those whom our elected representatives have deemed eligible." *Gressley,* 609 F.2d at 1268. In *Gressley,* this court found that no estoppel would lie against the government to require it to pay social security benefits to a claimant not entitled to them under the statute.

> The government could scarcely function if it were bound by its employees' unauthorized representations. Where a party claims entitlement to benefits under federal statutes and lawfully promulgated regulations, that party must satisfy the requirements imposed by Congress. Even detrimental reliance on misinformation obtained from a seemingly authorized government agent will not excuse a failure to qualify for benefits under the relevant statutes and regulations.

*Gressley,* 609 F.2d at 1267, quoting *Goldberg v. Weinberger,* 546 F.2d 477, 481 (2d Cir.1976), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977). The reasons for not allowing estoppel in social security benefit cases likewise apply in railroad retirement benefit cases. In this case, like *Gressley,* the petitioner seeks to estop the government from denying him benefits that he is not statutorily entitled to. The Supreme Court has stressed that federal courts have a duty "to observe the condi-

---

1. Crown does not argue that limiting the increased annuity to persons "entitled to an annuity under § 5(a) of the Railroad Retirement Act of 1937 as in effect on December 31, 1974" improperly insulates the dependency requirements found unconstitutional in *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). For cases dealing with constitutional attacks on similar statutory provisions see *Frock v. United States Railroad Retirement Board,* 685 F.2d 1041 (7th Cir.1982), *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983); *Givens v. United States Railroad Retirement Board,* 720 F.2d 196 (DC Cir.1983), *cert. denied,* 469 U.S. 870, 105 S.Ct. 219, 469 U.S. 870 (1984); *Steiger v. United States Railroad Retirement Board,* 761 F.2d 1428 (9th Cir.1985). Crown does argue, however, that he did not have an opportunity to rebut the Board's determination that he was a nondependent widower. Given Crown's employment as a railroad worker for over thirty years, we do not believe that such an opportunity to rebut would have helped Crown's case.

tions defined by Congress for charging the public treasury." *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). With this duty in mind, we decline to estop the government from denying Crown full dual benefits.

THE PETITION FOR REVIEW IS DENIED.