In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3816

ROGER D. HOLMAN,

Petitioner,

v.

UNITED STATES RAILROAD
RETIREMENT BOARD,

Respondent.

Petition for Review of a Decision of the
United States Railroad Retirement Board

Argued April 5, 2001--Decided June 13, 2001


   Before BAUER, RIPPLE, and EVANS, Circuit
Judges.

   EVANS, Circuit Judge.  Roger D. Holman
petitions for review of the United States
Railroad Retirement Board's computation
of his railroad retirement widower's
annuity benefits. The Board concluded
that Holman did not qualify for
additional payments in his widower's
annuity because he was not receiving at
least 50 percent of his support from his
wife in the year before her death. On
this petition for review, Holman argues
that the Board's use of a dependency
requirement violates his constitutional
right to equal protection under the law
because only men are required to
demonstrate dependency to qualify for
additional benefits. He also contends
that the Board did not follow its own
regulations when it disregarded household
services rendered by his wife in
determining that he was not one-half
dependent on her for support. The first
of these two issues occupies most of the
space devoted to this opinion.

   Holman and his wife Mary Ann were
lifelong employees of the Burlington
Northern Railroad. Mrs. Holman began
working as a railroad clerk at Burlington
Northern in October 1955 at the age of
19. Mr. Holman began working at the same
railroad as a switchman at the age of 20.

Both were employed at Burlington Northern for their entire working lives.

In June 1994 Mrs. Holman was diagnosed with cancer. She retired in May 1996 and Mr. Holman retired a month later. Mrs. Holman passed away on October 17, 1997. Eleven days later Mr. Holman applied for widower's annuity benefits based upon his deceased wife's earnings under the Railroad Retirement Act of 1974, 45 U.S.C. sec. 231 et seq. Under 45 U.S.C. sec. 231a(d)(1)(i), a widower of a qualified deceased railroad employee is entitled to annuity benefits if he is at least 60 years old and has not remarried. See Crown v. United States R.R. Retirement Bd., 811 F.2d 1017, 1019 (7th Cir. 1987).

Widower annuity amounts under 45 U.S.C. sec. 231c consist of two tiers. The first tier is the amount of insurance benefits to which the widower would have been entitled under the Social Security Act if the deceased employee's service as an employee after December 31, 1936, had been included in the term of employment as defined in that Act. See 45 U.S.C. sec. 231c(f)(1). In other words, this first tier is the amount of the widower's benefits payable under the Social Security Act based upon the same earnings period. See Crown, 811 F.2d at 1019. The Social Security Act has its own entitlement section, 42 U.S.C. sec. 402, which entitles Mr. Holman to an annuity equal to the primary insurance amount of his deceased wife. Id. This amount, however, must be reduced by the amount of retirement benefits the widower is receiving. See 45 U.S.C. sec. 231c(i)(2). Here, Mr. Holman's tier one retirement benefits exceeded his widower's benefits, and so his tier one benefit total was a net zero.

The second tier provides for certain increases in the annuity amount derived from the tier one calculation. See 45 U.S.C. sec. 231c(g). This second tier is an amount computed solely on the basis of the deceased employee's individual railroad employment. Under this computation a widower is entitled to an additional annuity amount that is 50 percent of the deceased worker's tier two amount. Crown, 811 F.2d at 1019-20.

The Railroad Retirement Act also

provides for a "restored amount" to be added to the tier two component of the annuity of a widower who would have qualified for an annuity under the Railroad Retirement Act of 1937 as administered on December 31, 1974. 45 U.S.C. sec. 231c(g)(4). Section 4(g)(4) governs the payment of a "restored amount":

If a . . . widower of a deceased employee is entitled to an annuity under section 231a(a)(1) of this title and if either such . . . widower or such deceased employee will have completed 10 years of service prior to January 1, 1975, the amount of the annuity of such . . . widower . . . shall be increased by an amount equal to the amount, if any, by which (A) the . . . widower's insurance annuity to which such . . . widower would have been entitled, upon attaining age 65, under section 5(a) of the Railroad Retirement Act of 1937 as in effect on December 31, 1974 . . . exceeds (B) the total of the annuity amounts to which such . . . widower was entitled . . . .

45 U.S.C. sec. 231c(g)(4). This "restored amount" is the difference between what the widower would have received under the Railroad Retirement Act of 1937 (where there would have been no reduction for entitlement to a second annuity) and what the widower did receive under the Act (after the tier one calculation is reduced due to the widower's receipt of a railroad retirement employee's annuity). Crown, 811 F.2d at 1021. Section 5(l)(i) of the 1937 Act, however, conditions eligibility for a restored amount upon the widower's (but not a widow's) receipt of at least one-half of his support from his wife. Id. at 1020.

   Here, Mr. Holman submitted an "Application for Widower's Annuity." Male applicants must submit a "Statement Regarding Contributions and Support" demonstrating one-half dependence on their deceased spouse. Holman stated on his application that he was dependent on his wife for 50 percent of his necessary living expenses. The award that Holman ultimately received, however, did not contain a "restored amount," and after his motion for reconsideration was denied, he appealed to the Board's Bureau of Hearings, arguing that the tier two portion of his annuity should be

increased because he was dependent upon his wife for one-half of his support at the time of her death. The hearings officer denied his appeal. Holman then appealed to a three-member panel of the Board, which remanded the case to the hearings officer to make further findings based on additional evidence newly submitted. The hearings officer evaluated the additional evidence and again denied Holman's claim for a restored amount.

On appeal for the second time, Holman submitted additional information regarding his ordinary and necessary living expenses. Once again, the Board remanded the case, concluding that the hearings officer erred by using a "pooled income" theory, which examines the relative incomes of the parties. The Board instructed the hearings officer to determine whether Holman received regular contributions from his wife that were at least one-half of his ordinary and necessary living expenses. Under 20 C.F.R. sec. 222.43, that determination requires an evaluation of the reasonableness of Holman's claimed expenses. On remand the second time, the hearings officer again ruled that Holman did not demonstrate a sufficient level of dependency for the year before his wife's death.

On appeal for the third time, Holman argued that it is unconstitutional to require a widower, but not a widow, to establish dependency. The Board summarily rejected that argument, stating only that its "application of section 4(g)(4) to widowers was upheld in Crown v. U.S. Railroad Retirement Bd., 811 F.2d 1017 (7th Cir. 1987)." Next, Holman argued that the hearings officer incorrectly interpreted the Board's regulations by discounting the value of household services performed by Mrs. Holman. Holman had claimed that his wife contributed nearly $48,000 in household services (through laundry, cooking, and cleaning), but the Board, citing Social Security Ruling 60-23 (1960), concluded that such personal services are not the type of services that should be considered in making a support determination. Consequently, the Board affirmed thehearings officer's decision that Holman was not entitled to the "restored amount." He now petitions for review of that decision pursuant to 45 U.S.C. sec.

231g, which gives us jurisdiction to entertain his plea.

Our review is limited to determining whether the Board's decision is supported by substantial evidence and has a reasonable basis in law. Wassenberg v. United States R.R. Retirement Bd., 75 F.3d 294, 296 (7th Cir. 1996). The Board's interpretation of the Act and its own regulations, if reasonable, are entitled to deference. Id.

Holman first argues that the Board's application of sec. 231c(g)(4) violates equal protection because it requires widowed spouses of retired female employees, but not widowed spouses of retired male employees, to prove actual dependency in order to qualify for a "restored amount" in the annuity calculation. In support of his position Holman cites two cases that struck down similar dependency requirements on equal protection grounds: Califano v. Goldfarb, 430 U.S. 199 (1977), and a case from the Sixth Circuit, Kalina v. Railroad Retirement Board, 541 F.2d 1204 (6th Cir. 1976), aff'd, 431 U.S. 909 (1977). In Goldfarb, the Supreme Court held that a provision in the Social Security Act requiring husbands, but not wives, to prove dependency on their insured spouse in order to receive spousal social security benefits violated the Fifth Amendment. 430 U.S. at 206-07. The Court concluded that the provision's gender classification rested upon "old notions" and "'archaic and overbroad' generalizations" that offend the prohibitions against denial of equal protection of the law. Id. at 211.

In Kalina, decided before Goldfarb, the Sixth Circuit concluded that the 1937 Act's dependency requirement violated equal protection because it treated similarly situated men and women differently, without a legally sufficient basis for doing so. Kalina, 541 F.2d at 1205. The 1937 Act, in identifying persons eligible for an annuity, defined "spouse" to include only husbands who were receiving at least one-half of their support from their wives. Id. at n.1. "The legislative history of the provision of the Railroad Retirement Act challenged here suggests no reason for the discriminatory treatment of male and female employees with respect to the

spouse's annuity." Id. at 1208. The Sixth Circuit noted that the provision primarily aimed to increase benefits to retired workers and their families. Id. The court noted that "it is not unreasonable to conclude" that when Congress confined benefits to only those husbands who were one-half dependent on their wives, it embraced the overbroad (and unconstitutional) generalization that male workers' earnings necessarily sustained their families, but female workers' earnings did not. Id. Finally, the court noted that the 1937 Act's definition was borrowed from the Social Security Act, 42 U.S.C. sec. 402(c)(1)(C), and that several courts had struck down that provision on equal protection grounds. Id.

Holman argues that under Goldfarb and the persuasive authority of Kalina, the Board's decision improperly denied him a "restored amount" by operation of dependency requirements that violate the Fifth Amendment. The Board's incorporation of the dependency requirement through sec. 231c(g)(4), Holman asserts, improperly attempts to grandfather an unconstitutional provision. He argues that "an unconstitutional law is 'in legal contemplation, as inoperative as though it had never passed.'" Gebbie v. United States R.R. Retirement Bd., 631 F.2d 512, 516 (7th Cir. 1980) (citing Norton v. Shelby County, 188 U.S. 425, 442 (1886)). Finally, Holman argues that although sec. 231c(g)(4) may appear gender-neutral on its face, it necessarily requires the application of unconstitutional gender-based dependency requirements.

In response to Holman's position, the Board argues that our decision in Crown already upheld the constitutionality of sec. 231c(g)(4). In Crown, we affirmed the benefit computations made for a petitioner in the same position as Holman. We concluded that under the 1937 Act, Crown could not have qualified for a widower's annuity because he was a nondependent male. Crown, 811 F.2d at 1020-21. The Board argues that Crown "could not have been decided in the Board's favor without the Court's approval of the application of the half-support requirement contained in section 4(g)(4) of the Act." Whether this is true or not we need not resolve, for the

Board's primary argument is that sec. 231c (g)(4) is not a gender-based classification but is instead a neutral, rational provision aimed at reducing the cost of "restored amounts" by limiting their payment to those individuals who would have reasonably expected to receive both an employee annuity and a survivor's annuity under the 1937 Act without the offset enacted in the Railroad Retirement Act. In a nutshell, the Board argues that provisions like sec. 231c(g)(4) do not classify according to sex, but instead operate to revive a past interpretation of law for the legitimate purpose of protecting annuitants' expectations prior to changes in the law. The Board points out that sec. 231c (g)(4) was added to the Act in 1976 as a technical amendment to preserve dual benefit expectations of beneficiaries who would receive more than one benefit under the law. See H.R. No. 1465, 94th Cong., 2d Sess. 7, reprinted in 1976 U.S.C.C.A.N. 5601, 5606-07. To preserve those expectations, sec. 231c(g)(4) requires that a widower's annuity be calculated under the law in effect on December 31, 1974. According to the Board, sec. 231c(g)(4) does not violate the Fifth Amendment because it is gender-neutral on its face (the provision only requires annuity calculations to be administered under the law in effect on December 31, 1974) and is rationally related to the nondiscriminatory purpose of preserving the expectations of a certain class of individuals. Thus, the Board argues that Holman can expect to receive a "restored amount" only if he can demonstrate dependency, which preserves what his entitlement would have been in 1974.

The Board cites two cases to bolster its argument that sec. 231c(g)(4) does not violate equal protection: Frock v. United States Railroad Retirement Board, 685 F.2d 1041 (7th Cir. 1981), and Heckler v. Mathews, 465 U.S. 728 (1984). Frock outlines briefly post-Goldfarb developments regarding annuity eligibility. In response to Goldfarb, the Board changed its policy and provided all workers with spousal social security benefits. Frock, 685 F.2d at 1043. But at the same time, the Board reduced workers' railroad annuity benefits by an amount equal to their spousal social security benefits, based on sec. 231b(m), which precludes the payment of dual benefits

(consisting of both employee annuity and spousal social security benefits). Id. Section 3(h)(6) precludes the payment of dual benefits unless the individual's eligibility had been determined by August 13, 1981, under sec. 231b(h)(3) and (4). Id. at 1045. Like sec. 231c(g)(4) in our case, the Board read sec. 231b(h)(3) and (4) to mandate the restoration of dual benefits to female railroad retirees and male retirees able to prove dependency. Id. at 1043. The petitioners in Frock argued that the Board's action was an attempt to "grandfather in" an interpretation of 45 U.S.C. sec. 231b(h)(3) and (4), which violated the Fifth Amendment. Id. at 1047-48. Section 231b(h)(3) and (4) contained the same language as sec. 231c(g)(4), allowing increases in annuity benefits equal to the amount of social security benefits accruing to them under the Social Security Act as in effect on December 31, 1974. Id.

In Frock we rejected the petitioners' argument and upheld the Board's interpretation of the statute. In doing so, we rejected a "strict standard" analysis, concluding that sec. 3(h)(6) is facially neutral and "clearly explainable" in terms of a nondiscriminatory purpose. By enacting the statute, Congress eliminated dual benefits while ensuring continued benefits to those who were receiving them. Id. at 1048-49. "[S]ection 3(h)(6) cannot rationally be explained as an effort to discriminate on the basis of gender. The class of persons excluded from dual benefits under this section will be composed of [dependent] men and women." Id. at 1049.

In Heckler, the Supreme Court unanimously upheld the constitutionality of a provision in the Social Security Act (similar to sec. 231c(g)(4)) that revived a dependency requirement. In 1977, as part of a general reform of the Social Security system, Congress repealed dependency requirements for widowers and husbands. Congress concluded, however, that elimination of the dependency test would create a serious fiscal problem-- costing the system as much as $190 million in 1979--by increasing the number of individuals entitled to unreduced spousal benefits. Id. at 732. In 1977, before these contemplated changes took

effect, retired civil servants could receive dual benefits (both spousal and employee benefits). Id. To avoid this significant fiscal drain, Congress included a "pension offset" requiring that the amount of spousal benefits be reduced by the amount of employee pensions (analogous to the Railroad Retirement Act's tier one component). Id. Congress estimated that 90 percent of the savings resulting from this pension offset would be achieved by reducing payments to nondependent husbands and widowers who had not been entitled to any benefits before Goldfarb. Id. at 732-33. But the remaining savings would come from those individuals who had retired in reliance on their entitlement under pre-1977 law to spousal benefits unreduced by employee benefits. Id. at 733. This group included women and dependent men. Id. To protect the reliance interests of this group, Congress established a 5-year grace period, from January 1977 to December 1982, exempting such individuals from the pension offset requirement. Id. at 742. Thus, these changes to the Social Security Act, like sec. 231c(g)(4), revived the dependency requirements that were struck down in Goldfarb.

The Supreme Court in Heckler upheld the gender-based classification. First, the Court, unlike our court in Frock, acknowledged that the provision was a gender-based classification. Id. at 744. Next, the Court concluded that the offset exception, though temporarily reviving the gender-based eligibility requirements invalidated in Goldfarb, reflected a legitimate purpose to protect reliance expectations. Id. "Congress accomplished its aim by incorporating the eligibility criteria as they existed in January 1977; its choice of this approach rather than an explicit adoption of new gender-based standards confirms that its purpose was to protect reliance on prior law, not to reassert the sexist assumptions rejected in Goldfarb." Id. at 745-46. The Court noted that it has recognized in a number of contexts "the legitimacy of protecting reasonable reliance on prior law even when that requires allowing an unconstitutional statute to remain in effect for a limited period of time." Id. at 746. Finally, the Court concluded that the statute is substantially related to the achievement of that legitimate purpose and is narrowly tailored to

protect only those individuals who were eligible in 1977. Id. at 749.

Resolving our case is not a difficult task. Under Goldfarb, dependency requirements violate the Equal Protection Clause. But Heckler recognized that such a requirement may be revived if it is substantially related to a legitimate purpose and narrowly tailored to achieve that goal. Under our reasoning in Frock, sec. 231c(g)(4) is gender-neutral and rational; it generally incorporates the law as it existed in Goldfarb, and its purpose is to protect widowers' expectations. But Heckler recognized that a provision similar to sec. 231c(g)(4) that revived a provision featuring a gender-based dependency requirement is a gender-based classification and not gender-neutral. Moreover, the Heckler Court, in concluding that such a provision was narrowly tailored, emphasized the temporary nature of the social security provision at issue. In our case, although the dependency requirement endures to this day; it is clearly running out of gas. It is difficult to imagine that there are many married couples who, like the two Hecklers, started working for a railroad some 45 years ago. Under Heckler, although sec. 231c(g)(4) is a gender-based classification, it is one narrowly tailored to the legitimate purpose of protecting the reliance interests of railroad retirees and, thus, not violative of the Fifth Amendment. It also is not an "accidental byproduct of a traditional way of thinking about females" that reflected "old notions" and "'archaic and overbroad' generalizations" about the roles and relative abilities of men and women. Goldfarb, 430 U.S. at 211, 217 & 223.

The final issue relates to the Board's determination that Holman did not demonstrate dependency. Holman argues that the Board misapplied its own regulations, which "command contemplation of services rendered by Mary Ann without restriction or condition." Specifically, he argues that the Board failed to follow 20 C.F.R. sec. 222.42(a), which guides the Board's support determination:

An employee is contributing to the support of a person if the employee gives cash, goods, or services to help support

such person. Support includes food, clothing, housing, routine medical care, and other ordinary and necessary living expenses. The value of any goods which the employee contributes shall be based upon the replacement cost of those goods at the time they are contributed. If the employee provides services that would otherwise require monetary payment, the cash value of the employee's services may be considered a contribution to support.

20 C.F.R. sec. 222.42(a). In addition, 20 C.F.R. sec. 222.43(a) provides that contributions may be in cash, goods, or services. Under Social Security Ruling 60-23 (1960), which interprets the analogous Social Security Regulation, see 20 C.F.R. sec. 404.366, the value of the care normally furnished personally by one individual to another does not significantly influence the determination of support. Under S.S.R. 60-23, it is generally necessary to exclude personal services in calculating support unless such services are purchased. In rejecting Holman's claim for a "restored amount," the Board (1) concurred with the hearings officer's rejection of Holman's claim that he would pay $48,000 for personal services which he claims were performed by his wife because he could provide such services for himself; and (2) concluded that his claimed personal services are not the type of services that should be considered in making a support determination.

The Board's interpretation of the Railroad Retirement Act and its own regulations are entitled to deference if it has a reasonable basis in law. Itel Corp. v. United States R.R. Retirement Bd., 710 F.2d 1243, 1245 (7th Cir. 1983). Holman acknowledges that the Board may consider 20 C.F.R. sec. 404.366 in making its determination and that S.S.R. 60-23 interpreted that provision. See, e.g., Aspros v. United States R.R. Retirement Bd., 904 F.2d 384, 387 (7th Cir. 1990). Thus, the Board properly considered Holman's claim for personal services as "support" by evaluating the reasonableness of his expenses in light of that ruling. Moreover, S.S.R. 60-23 is not inconsistent with sec. 222.42; it merely provides guidance for how to determine the value of those services. Accordingly, the Board's determination has a reasonable basis in law.

AFFIRMED.